Martha HEWITT, Personal Representative of the Estate of Howard Hewitt, Deceased; and Martha Hewitt and Harry Hewitt, on their own behalf, Plaintiffs-Appellants,

v.

CITY OF TRUTH OR CONSEQUENCES; John Sawyer, individually and as Chief of Police for the City of Truth or Consequences; Elfigo Armijo, individually and as former Chief of Police for the City of Truth or Consequences; John Sarember, individually and as a police officer for the City of Truth or Consequences; Brack Callahan, individually and as a police officer for the City of Truth or Consequences; Henry Cruz, individually and as a Reserve Deputy Sheriff for the County of Sierra, New Mexico; Andy Garcia, individually and as a Mayor of the City of Truth or Consequences; Charlie Cox, individually and as Sheriff of Sierra County, New Mexico; and Board of County Commissioners for the County of Sierra, New Mexico, Defendants-Appellees.

No. 82–2447.

United States Court of Appeals, Tenth Circuit.

April 4, 1985.

Ray Lewis Fuller of Southern New Mexico Legal Services, Las Cruces, N.M. (Morton S. Simon of Friedland, Simon, Lopez, Vigil & Nelson, Santa Fe, N.M., with him on the brief), for plaintiffs-appellants.

Rebecca A. Houston, Albuquerque, N.M. (Charles A. Pharris, Albuquerque, N.M., with her on the brief) of Keleher & McLeod, P.A., Albuquerque, N.M., for defendants-appellees, Sarember, Callahan, City of Truth or Consequences, Sawyer, Armijo, and Garcia.

John F. Nivala of Cherpelis & Nivala, P.A., Albuquerque, N.M. (J. Duke Thornton of Shaffer, Butt, Thornton & Baehr, Albuquerque, N.M., with him on the brief), for defendants-appellees, Cruz, Cox, and Sierra County Bd. of Com'rs.

Before BARRETT, DOYLE and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

█ This civil rights action was brought by Martha Hewitt as personal representative of the estate of her son Howard Hewitt, and by Martha and her husband Harry Hewitt on their own behalf.[1] Plaintiff sought damages and injunctive relief pursuant to 42 U.S.C. § 1983 (1982) against the City of Truth or Consequences, the Sierra County, New Mexico Board of County Commissioners, various City and County supervisory officials, City police officers John Sarember and Brack Callahan, and

---

1. Mr. and Mrs. Hewitt argue on appeal that the court erred in failing to recognize the claim brought on their own behalf. Although the trial court did not give the proposed instruction on this claim, plaintiffs made no objection below. Consequently, the Hewitts may not raise this issue as error on appeal. *See* Fed.R.Civ.P. 51. Our references to plaintiff in this opinion refer only to Martha Hewitt in her representative capacity.

Sierra County Reserve Deputy Sheriff Henry Cruz. Plaintff alleged that Howard Hewitt's death during events following his arrest deprived Hewitt of his Fourth, Fifth, Eighth,[2] and Fourteenth Amendment rights.

The issues for trial were bifurcated, and the only matter to be determined in the first phase was whether defendants Sarember, Callahan, and/or Cruz, who had been involved personally in the events surrounding Hewitt's death, had used excessive force. The jury found in favor of all three defendants by returning special verdicts in response to interrogatories. On appeal, plaintiff's primary contention is that the district court erred by ruling that police negligence could not be the basis for a separate claim under section 1983. Plaintiff argues that the court therefore erroneously refused to allow the admission of evidence or to instruct on alleged negligence. Plaintiff also asserts error regarding other evidentiary rulings and with respect to the jury instructions given. For the reasons set out below, we affirm.

## I.

The tragic facts generating this suit, viewed most favorably to the jury verdict, *see Rodgers v. Hyatt,* 697 F.2d 899, 905 (10th Cir.1983), are as follows.

While on early morning patrol duty, Callahan received a report that the window of a bar had been broken and that a burglary was suspected. Upon arriving at the bar, Callahan discovered Hewitt in a tree, intoxicated and wearing only a pair of jeans and boots. Callahan arrested Hewitt, searched him, handcuffed his hands behind his back, and placed him in the back of his police car. A metal grid separated the front and back seats of the car, and the inside door handles had been removed.

Sarember, who was not on duty, was dispatched from his home to the bar to back up Callahan. Hewitt was already handcuffed and in the police car when Sarember arrived. After searching the bar, Sarember went to the police station to pick up a fingerprint kit and a camera.

Cruz, who was also off-duty, heard about the activity at the bar over the police radio and went there on his own initiative. Callahan asked Cruz to watch Hewitt, who was then in the police car, while Callahan searched the bar and arranged to have Hewitt's car towed. Cruz informed Callahan that Hewitt had managed to work his hands around in front of him. Callahan took Hewitt out of the car and frisked him again, this time finding a pistol grip in his front pocket. Callahan put the grip back in the pocket and adjusted Hewitt's handcuffs, although he did not recuff Hewitt with his hands behind his back. Callahan then put Hewitt back in the police car and locked the doors. Callahan testified at trial that he knew it was possible for someone in the back seat of the car to get out of the locked vehicle by reaching through a gap in the metal grid and manipulating the lock mechanism.

Callahan went back to the tow truck operator and was subsequently informed by Cruz that Hewitt had a gun. Callahan returned to the police car and saw Hewitt with a gun to his mouth. Hewitt threatened to shoot himself if Callahan did not let him go. Callahan tried unsuccessfully to reason with Hewitt, who managed to open the door and get out of the car.

Hewitt continued to threaten suicide and began to back across a street and toward an open field covered with scrub brush. Callahan drew his own gun and told Hewitt to drop his. Hewitt refused, and continued to back up while Callahan continued to advance. As Hewitt backed across the field, pointing the gun at himself and wav-

---

**2.** The district court correctly ruled that the use of excessive force on a pretrial detainee does not violate the Eighth Amendment's prohibition of cruel and unusual punishment. The Eighth Amendment does not apply until after an adjudication of guilt. *See Bell v. Wolfish,* 441 U.S.

520, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447, 535 n. 16 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977). On appeal, plaintiff pursues only her claim grounded on the Due Process clause of the Fourteenth Amendment.

ing it around, Sarember returned. Sarember testified that Hewitt shouted he was going to kill himself and that he, Sarember, had responded "go ahead." Rec., vol. VII, at 564. Sarember went back to his car, positioned it so that the headlights were shining on Hewitt, got out of the car with a shotgun, and chambered a round of ammunition.

Sarember called to Hewitt that they were through playing games, or words to that effect, pointed the shotgun at him, and told him to drop the gun. Sarember testified that Hewitt then turned toward him in a crouching position, dropped the gun into a shooting posture, and aimed it at Sarember. Sarember fired the shotgun, killing Hewitt. The gun in Hewitt's possession, which had been hidden in his boot, was subsequently determined to be a nonshooting starter pistol.

## II.

Plaintiff alleged at trial that Callahan, Cruz, and Sarember had unconstitutionally deprived Hewitt of his life without due process by their use of excessive force. The jury decided this claim in favor of defendants, finding by special verdicts that a person in Sarember's position could reasonably believe that Hewitt's starter pistol was a functional weapon, that Sarember himself believed the weapon was functional, and that Hewitt suddenly pointed the pistol at Sarember as if preparing to shoot Sarember immediately before Sarember shot him. Plaintiff does not argue on appeal that these findings are unsupported by the evidence.

Plaintiff also alleged below that Callahan, Cruz, and Sarember had negligently searched, handcuffed, and secured Hewitt in the police car, and had negligently or improperly handled Hewitt as a potential suicide. Plaintiff contended that this negligence proximately caused the use of deadly force and thus stated a separate claim for

relief under section 1983. The trial court ruled that there was no evidence of gross negligence or wantonness, and that ordinary negligence cannot be the basis for recovery under section 1983 and the Fourteenth Amendment. Accordingly, the judge did not allow the jury to consider any evidence of the alleged negligent acts.[3] On appeal, plaintiff relies on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), to support her contention that negligent acts provide a basis for section 1983 liability.

■ . In *McKay v. Hammock*, 730 F.2d 1367 (10th Cir.1984) (en banc), this court recognized that "a plaintiff need not necessarily address a defendant's state of mind to successfully articulate a section 1983 cause of action ...." *Id.* at 1373. We pointed out that neither the statutory language nor the relevant Supreme Court decisions impose any intent requirement on a section 1983 claim, and that "the relevant inquiry should focus on what state of mind, if any, is imposed by the particular constitutional provision at issue." *Id.* Accordingly, negligent conduct may under appropriate circumstances give rise to a constitutional deprivation remediable under section 1983.

■ Plaintiff does not articulate the constitutional provision she believes is violated by the negligent acts alleged here. However, the Due Process Clause protects individuals from the abuse of official power and therefore imposes substantive limitations on state activities. Due process affords not only a procedural guarantee against deprivation of life, liberty, and property, but likewise protects substantive aspects of those interests. *See, e.g., Kelley v. Johnson*, 425 U.S. 238, .244, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Baer v. City of Wauwatosa*, 716 F.2d 1117, 1123 (7th Cir.1983); *Wilwording v. Swenson*, 502 F.2d 844, 851 (8th Cir.1974), *cert. denied*, 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843

---

**3.** The court alternatively ruled that if defendants were negligent in searching, handcuffing, and securing Hewitt, and in dealing with his suicide threats, these acts were not the proxi-

mate cause of Hewitt's death as a matter of law. In view of our resolution of the negligence claim, we need not address the propriety of this ruling.

(1975). "[T]he right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause." *Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982).

Police conduct is thus limited by substantive as well as procedural restrictions. *See, e.g., Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). In *Rochin* due process was offended when evidence was admitted at trial that had been obtained by police conduct which "shocks the conscience." *Id.* at 172, 72 S.Ct. at 208. In condemning this result, the Court pointed out that the Due Process Clause is "the least specific and most comprehensive protection of liberties," and that defining its vague contours must necessarily involve an evaluation of the circumstances in the particular case. *Id.* at 170–72, 72 S.Ct. at 208–210.

■ In considering when negligent conduct may constitute a substantive denial of due process, we are guided by the analysis applied in cases involving alleged use of excessive force. Not all force used by police rises to a constitutional violation. *See Wise v. Bravo*, 666 F.2d 1328, 1333–35 (10th Cir.1981); *Mills v. Smith*, 656 F.2d 337, 339–40 (8th Cir.1981); *cf. Sampley v. Ruettgers*, 704 F.2d 491, 494 (10th Cir.1983) (use of force by prison guards). But the use of *excessive* force on a pretrial detainee deprives the victim of life or liberty without due process in violation of the Fourteenth Amendment. *Black v. Stephens*, 662 F.2d 181, 188 (3d Cir.1981), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Herrera v. Valentine*, 653 F.2d 1220, 1229 (8th Cir.1981). Factors relevant to whether the use of force is excessive are the relationship between the amount of force used and the need present-

ed, the extent of the injury inflicted, and the motives of the state officer. *See Wise*, 666 F.2d at 1333. Force inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness, may be redressed under section 1983. *Id.* at 1333–34; *see Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981).

■ We need not decide how egregious police conduct must be to rise to a substantive denial of due process. *See generally Lessman v. McCormick*, 591 F.2d 605, 609–11 (10th Cir.1979) (discussing cases). Wherever that line may be drawn, the conduct complained of here simply is not an abuse of power condemned by the Constitution. Hewitt was a suspected felon who resisted arrest. The police were justified in searching him, handcuffing him, and securing him in a police car. Their negligence, if any, in performing these acts does not offend the principles of decency and justice embodied in the Due Process Clause. Plaintiff's claim based on the alleged negligence thus failed to state a constitutional deprivation remediable by section 1983. Accordingly, we find no grounds for reversal in the trial judge's refusal to submit the negligence claim to the jury, or in his failure to allow evidence to be introduced on that claim.

The opinion in *Parratt* is consistent with the principle that abuse of state power is the standard by which a denial of due process is measured. In considering the sufficiency of *procedural* due process, the Court in *Parratt* held that a prisoner whose hobby kit was negligently lost did not establish a Fourteenth Amendment violation because the state tort law provided him an adequate process for remedying the loss.[4] If the state had failed to provide

---

**4.** The Court in *Parratt* cautioned that "[t]he fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" 451 U.S. at 540, 101 S.Ct. at 1915 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). As we recently recognized in *Lusby v.*

*T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1434 (10th Cir.1984), where a deprivation of life or liberty is involved, no postdeprivation state remedy in the form of damages can ever provide a meaningful hearing to the victim so as to satisfy procedural due process. *See also Parratt*, 451 U.S. at 545, 101 S.Ct. at 1918 (Blackmun, J., concurring); *Hudson v. Palmer*, — U.S. —,

meaningful procedures for compensating the prisoner, an abuse of power would have existed remediable under section 1983. *See* 451 U.S. at 537, 101 S.Ct. at 1914. The Court made clear in *Parratt* that absent such abuse, negligent conduct by the state does not violate the Constitution:

> "Our decision today is fully consistent with our prior cases. To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under 'color of law' into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States.' *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). We do not think that the drafters of the Fourteenth Amendment intended the Amendment to play such a role in our society."

451 U.S. at 544, 101 S.Ct. at 1917.

In sum, the alleged negligent conduct in the present case fails to rise to a denial of due process not because state post-deprivation procedures are adequate, but because the negligence asserted does not constitute an abuse of official power.

## III.

We now turn to plaintiff's remaining allegations of error. Plaintiff offered evidence at trial of actions and statements made by Sarember subsequent to the shooting which she claims were probative of Sarember's intent and state of mind when he shot Hewitt. This evidence, which was disputed by Sarember, included testimony that Sarember had requested a photograph of the deceased for his scrapbook, had asked to take his own pictures of Hewitt at the mortuary, and had requested the shotgun shell that killed Hewitt for a souvenir. The district court denied admission of the evidence pursuant to Fed.R.Evid. 403, ruling that the probative value of this evidence, if any, was outweighed by its prejudicial effect.

"A trial court has broad discretion in applying Rule 403." *United States v. Mangiameli*, 668 F.2d 1172, 1176 (10th Cir.), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982); *see In re Beverly Hills Fire Litigation*, 695 F.2d 207, 218 (6th Cir.1982), *cert. denied sub nom. Bryant Electric Co. v. Kiser*, 461 U.S. 9, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983). The court "may exclude otherwise admissible evidence after balancing its probative value against certain competing considerations set forth in the rule and concluding that the costs of the evidence outweigh its benefits." *Mangiameli*, 668 F.2d at 1176. In this case, the court stated his doubt that the proffered evidence was relevant to the issue of excessive force, and that even if it were "the prejudicial effect of this testimony would far outweigh any probative value in the case." Rec., vol. V, at 41. We find no abuse of discretion.

Plaintiff also contends on appeal that the trial court failed to instruct the jury adequately on the issue of excessive force.[5] In assessing this argument, we must review the instructions as a whole to

---

104 S.Ct. 3194, 3208 n. 4, 82 L.Ed.2d 393 (1984) (Stevens, J., concurring).

**5.** We note that the trial court did not frame its instructions on this issue in terms of the standards set out in *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981). *See* part II *supra*. Although the *Wise* formulation is preferable, plaintiff did not request such an instruction and, in view of the instructions given, no plain error is present.

determine whether they adequately guided the jury under the applicable law. *See Irving v. Dubuque Packing Co.*, 689 F.2d 170, 173–74 (10th Cir.1982). In this case the instructions given, together with the special interrogatories, were sufficient.

The judgment is affirmed.

WILLIAM E. DOYLE, Circuit Judge, dissenting.

I regret that I am unable to agree with the majority decision and that I must dissent. I offer a brief explanation as to why I have come to this conclusion.

The majority correctly ruled the trial judge erred in deciding that ordinary negligence can never support the § 1983 suit. However, there was no necessity for the jury to have to decide that question because, as I view it, the conduct of the three officers added up to a possible conclusion that there was gross negligence and wanton conduct on the part of at least one of the three police officers. In particular I refer to actions of the policeman who fired the shotgun at the victim and killed him.

I am not saying that the conduct of the officers amounted to wilful and wanton conduct on their part. I am saying that there was conduct from which a fact finder could draw such a conclusion. It is, of course, sufficient if the facts would support such a decision. The three officers had control of this man once and they failed to handcuff him and properly search him. If they had been more careful, then they could have avoided the tragedy. Also the policeman who fired the shotgun told the deceased just prior thereto that when the deceased demanded to be released and threatened to kill himself, he was told to go right ahead and kill himself. One officer told Hewitt to go ahead and kill himself. There was some evidence indicating that another of the officers threatened to kill Hewitt if Hewitt did not kill himself.

Based on these facts, the issues ought to have been submitted to the jury.