**Gerald F. DAMM, Plaintiff,**

**v.**

**Michael SPARKMAN, and Board of County Commissioners of Barton County, Kansas, Defendants.**

**No. 83–1927–K.**

United States District Court,
D. Kansas.

May 22, 1985.

John L. Hampton, Great Bend, Kan., for plaintiff.

Alan L. Rupe, of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

The plaintiff, Gerald Damm, brings this suit under 42 U.S.C. § 1983 against a law enforcement officer and the Board of County Commissioners, alleging the officer used excessive force while plaintiff was in custo-dy in the county jail, in violation of his constitutional rights. This Court sustained the earlier motion of defendant Board of County Commissioners of Barton County, Kansas, for summary judgment on November 26, 1984. The matter is now before the Court on the motion for summary judgment of the defendant, Officer Sparkman. For the reasons stated below, the defendant's motion must be granted.

Gerald Damm was arrested in the early morning hours of September 11, 1983, for driving under the influence of alcohol and for driving left of center. The arresting officer transported Mr. Damm to the Barton County Jail for booking and holding. The jailer, Officer Tuggle, unhandcuffed Mr. Damm, placed him in the holding area, and asked him to sign some processing documents. Mr. Damm refused to sign the documents. The defendant, Officer Sparkman, told Mr. Damm that he must return to a cell if he refused to cooperate in the booking procedure. Mr. Damm refused to sign the documents and refused to go back to a cell. Officers Sparkman and Tuggle handcuffed Mr. Damm and proceeded to take him to a cell. The events that transpired during their attempt to take him to the cell give rise to this lawsuit.

Looking at the facts in the light most favorable to the plaintiff, the circumstances were as follows. Mr. Damm testified that at the time he was arrested for the traffic violations he was under the influence of alcohol, was unable to satisfactorily perform the field sobriety test, and resisted being handcuffed. (Damm Depo. pp. 63–65). Mr. Damm was agitated when the officers informed him he would have to spend the night in jail. (Damm Depo. p. 71). When he was at the county jail, Mr. Damm refused to sign some booking processing papers because they were blank, even though the officer told him they were for fingerprints. (Damm Depo. pp. 74–75). Mr. Damm then refused to leave the booking area and go to a cell. (Damm Depo. pp. 75–77). Officer Sparkman assisted the jailer, Officer Tuggle, in forcibly moving Mr. Damm to his cell. (Damm Depo. pp. 76–

78). (The correct name of the jailer is Officer Tuggle, although there was some confusion in early discovery and Mr. Damm's deposition as to the jailer's name.) Officer Sparkman pinned Mr. Damm against the wall and Officers Sparkman and Tuggle handcuffed Mr. Damm. (Damm Depo. pp. 78–79). Mr. Damm resisted being handcuffed. (Damm Depo. p. 79). Mr. Damm testified that once he was handcuffed Officer Sparkman said words to the effect, "[W]e'll have to show you why you would have wished you would have listened to us earlier," and proceeded to hit Mr. Damm about the face. (Damm Depo. pp. 80–81). Mr. Damm testified that Officer Sparkman struck him in the face "probably six to eight times." (Damm Depo. p. 81). Mr. Damm was then placed in his cell. (Damm Depo. p. 82). Mr. Damm's nose was bleeding. (Damm Depo. p. 84). Mr. Damm has no residual or permanent damage from the incident. (Damm Depo. p. 90). Mr. Damm had a bruise inside his lip for two or three weeks. (Damm Depo. p. 90). Mr. Damm had bruises on his face which he could feel but could not see because he had a full beard. (Damm Depo. p. 91). Mr. Damm had a cut on his eye which did not heal for a week or so. (Damm Depo. p. 91). Mr. Damm had a sore nose for a few weeks. (Damm Depo. p. 92).

The defendant, Officer Sparkman, on the other hand, testified that Mr. Damm refused to cooperate in the booking procedure. (Sparkman Depo. p. 120). Officer Sparkman testified he informed Mr. Damm that if he refused to cooperate with the booking process he would have to go back to a holding cell. (Sparkman Depo. p. 121). Mr. Damm told Officer Sparkman that he was not going to move. (Sparkman Depo. p. 121). Officer Sparkman testified that he and Officer Tuggle attempted to bodily move Mr. Damm from the booking area into a holding cell. (Sparkman Depo. pp. 121–122). During this process, Officer Sparkman struck Mr. Damm with his fist on the side of the head. (Sparkman Depo. p. 123). Officer Sparkman testified he struck Mr. Damm only one time. (Sparkman Depo. p. 124).

The plaintiff, Gerald Damm, asserts in his suit that the defendant, Michael Sparkman, violated Gerald Damm's right to be informed of the nature and the cause of the accusations against him as secured by the Sixth and Fourteenth Amendments to the Constitution of the United States, the right of Gerald Damm not to be deprived of liberty without due process of law as secured by the Fourteenth Amendment of the Constitution of the United States, and the right of Gerald Damm to the equal protection of the laws as secured by the Fourteenth Amendment of the Constitution of the United States.

The defendant, Officer Sparkman, moves for summary judgment, arguing that the plaintiff fails to state a claim under § 1983 because the defendant did not deprive the plaintiff of a constitutional right. Officer Sparkman argues that he did not deprive the plaintiff of his Fourteenth Amendment right to be free from deprivation of liberty without due process because the plaintiff retains the right to sue defendant in state court for state tort causes of action, and therefore the plaintiff has access to adequate due process, citing the decision of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

This matter presents the question of whether, when taking the facts in the light most favorable to the plaintiff, Officer Sparkman's conduct violated a constitutional right of Mr. Damm so as to be cognizable under 42 U.S.C. § 1983.[1] More precise-

---

1. 42 U.S.C. § 1983 (1981) states as follows:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Colum-

ly the issue is, when does a police officer's use of excessive force rise to the level of a constitutional violation remediable under § 1983?

The Court first addresses the defendant's argument that the *Parratt v. Taylor* rule should apply to liberty deprivations with the result that an individual injured by a state official would not be deprived of his constitutional right to be free from a deprivation of liberty without due process of law, so long as the injured person had access to post-deprivation state tort remedies in a state court. *Parratt* was a property deprivation case in which a prison inmate filed a § 1983 claim contending that the prison officials' negligent loss of his $23.50 hobby kit was a deprivation of property without due process of law. The Supreme Court found that the prisoner had been deprived of property within the meaning of the Fourteenth Amendment. The Court, nonetheless, held that the availability of a post-deprivation damages remedy in state court constituted adequate due process, that the plaintiff was not deprived of property *without due process of law* within the meaning of the Fourteenth Amendment, and that, therefore, the plaintiff failed to establish a constitutional violation cognizable under § 1983.

Courts analyzing *Parratt v. Taylor* spawned a line of varied and sometimes conflicting decisions. Some courts limited the application of the *Parratt* rationale to cases involving *negligent* deprivations as compared with intentional or reckless deprivations, while other courts applied *Parratt* regardless of the mental state of the tortfeasor; some courts reasoned that the *Parratt* rule applied only to *property* deprivations and not to liberty deprivations, while other courts reasoned there was no basis for this distinction. *See generally Barnier v. Szentmiklosi*, 565 F.Supp. 869, 876–78 (E.D.Mich.1983) (cases listed).

▇ This Circuit has recently indicated in dicta that the rule of *Parratt v. Taylor* applies only to property deprivations and does not apply to liberty deprivations. The Tenth Circuit Court of Appeals has stated, "[W]here a deprivation of life or liberty is involved, no postdeprivation state remedy in the form of damages can ever provide a meaningful hearing to the victim so as to satisfy procedural due process." *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375, at 1379 n. 4 (10th Cir.1985), *citing Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423, 1434 (10th Cir.1984). Thus, the defendant's argument that the *Parratt* rationale should be extended to cases involving liberty deprivations must fail in face of recent guidance from the Circuit. That is, in view of this dicta, this Court cannot hold that as long as the plaintiff can bring a battery suit in state court, the plaintiff has adequate due process and is not deprived of liberty without due process of law.

Nonetheless, analyzing due process deprivation cases in the context of a liberty versus property distinction overlooks a more fundamental and critical distinction of due process rights: substantive and procedural due process. Two cases very helpful to an understanding of *Parratt* and of the issue of when police misconduct rises to the level of a constitutional due process violation sufficient to support a § 1983 claim are *Ramos v. Gallo*, 596 F.Supp. 833 (D.Mass.1984), and *Barnier v. Szentmiklosi*, 565 F.Supp. 869 (E.D.Mich.1983). These courts noted that due process rights encompass substantive and procedural due process; that *Parratt* was a procedural due process case; and that the *Parratt* rule does not apply to substantive due process violations.

In *Ramos v. Gallo*, the defendant made an argument similar to the argument of the defendant in the case at bar. The defendant in *Ramos* argued that a police officer's negligent shooting of the plaintiff did not constitute a violation of the plaintiff's rights of due process because state court remedies would afford plaintiff full redress for any deprivation of liberty, in accordance with the holding in *Parratt v. Taylor*. The court emphasized that the defendant's

bia shall be considered to be a statute of the District of Columbia.

argument urging the application of *Parratt* to a deprivation of liberty failed to take account of the distinction between substantive and procedural due process. The court reasoned that the decision of *Parratt v. Taylor* addressed only a claim of a violation of *procedural* due process, and that a claim of a violation of substantive due process is not affected by the holding in *Parratt.* The court found that there was no constitutional violation of the plaintiff's procedural due process rights because of the availability of a remedy in state court. The court, however, did find that there was an issue of material fact as to whether the police officer's conduct was so outrageous and shocking to the conscience as to present a claim of violation of his substantive due process, and the court therefore overruled the defendant officer's motion for summary judgment.

Other courts analyzing the *Parratt* decision with respect to substantive and procedural due process agree that *Parratt* was a procedural due process case, and that the *Parratt* rule does not apply to substantive due process violations. *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375 (10th Cir.1985); *Augustine v. Doe,* 740 F.2d 322, 326 (5th Cir.1984) (cases cited); *Daniels v. Williams,* 720 F.2d 792, 796 n. 3 (4th Cir.1983). *See also Ramos v. Gallo, supra,* at 838 (cases cited); *Barnier v. Szentmiklosi, supra,* at 880 (cases cited).

The guarantees of procedural due process and of substantive due process are encompassed in the Fourteenth Amendment right to due process of law. *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375 (10th Cir.1985). Judge Keeton of Massachusetts described the guarantees as follows:

A procedural due process claim alleges that the state has unlawfully interfered with a protected liberty or property interest by failing to provide adequate procedural safeguards. The claim focuses on the procedures used by the state in effecting the deprivation of liberty or property, which the claimant argues were inadequate in light of the significance of the interests involved. *Parratt* ... invoke[s] this analysis.

A substantive due process claim, on the other hand, alleges not that the state's procedures are somehow deficient, but that the state's conduct is inherently impermissible, regardless of any protective or remedial procedures it provides. It is based on "the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court."

The theory of substantive due process derives from the case of *Rochin v. California* [342 U.S. 165, 72 S.Ct. 205, 96 L.Ed.2d 183 (1952)]. In *Rochin,* the Court held that police action in obtaining evidence by subjecting a suspect against his will to a stomach pump so "shocks the conscience" as to violate due process. Justice Frankfurter wrote, "Due process of law is a summarized constitutional guarantee of respect for those personal immunities which ... are 'so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or are 'implicit in the concept of ordered liberty.' "

*Ramos v. Gallo,* 596 F.Supp. 833, 837 (D.Mass.1984) (citations omitted).

Substantive due process includes the right to be free from the use of excessive force by law enforcement officers. *Hewitt v. City of Truth or Consequences,* 758 F.2d 1375 (10th Cir.1985); *Wilson v. Beebee,* 743 F.2d 342 (6th Cir.1984); *Black v. Stephens,* 662 F.2d 181 (3d Cir.1981); *Jacobs v. City of Wichita,* 531 F.Supp. 129 (D.Kan.1982).

The Tenth Circuit has declined to formulate a precise test to define what conduct constitutes use of excessive force sufficiently egregious to rise to the level of a substantive denial of due process. *Hewitt v. City of Truth or Consequences, supra,* at 1379. *See also Ramos v. Gallo,* 596 F.Supp. 833, 838 (D.Mass.1984) ("I need not and do not at this time address the troubling question as to the legally correct

standard of severity of an intrusion required to establish a violation of rights protected under the rubric of substantive due process."); and *Schiller v. Strangis*, 540 F.Supp. 605, 616–17 (D.Mass.1982) (court addressed the respective weights of the "relevant factors" test). In *Hewitt*, the Court stated that "abuse of power is the standard by which a denial of due process is measured." *Id.* at 1379. The Court referred to the oft-quoted relevant factors used to determine when force is excessive as follows:

> Factors relevant to whether the use of force is excessive are the relationship between the amount of force used and the need presented, the extent of the injury inflicted, and the motives of the state officer. Force inspired by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, or by malice rather than mere carelessness, may be redressed under § 1983.

*Id.* at 1379, *citing Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981), and *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981). The Court held that the alleged negligent conduct of a police officer which resulted in the officer's fatal shooting of an arrestee did not constitute a constitutional deprivation remediable under § 1983. The Court stated as follows:

> We need not decide how egregious police conduct must be to rise to a substantive denial of due process. Wherever that line may be drawn, the conduct complained of here simply is not an abuse of power condemned by the Constitution. Hewitt was a suspected felon who resisted arrest. The police were justified in searching him, handcuffing him, and securing him in a police car.

*Id.* at 1379.

Therefore, in determining when use of excessive force by a peace officer rises to a constitutional violation cognizable under § 1983, this Court is guided by the principle that abuse of official power is the fundamental standard governing denial of substantive due process rights, and by the general guidelines enunciated in the relevant factors test.

■ In the case at bar, the Court considers the facts in the light most favorable to the plaintiff to determine whether the conduct of Officer Sparkman violated Mr. Damm's substantive due process rights. Accepting as true Mr. Damm's own testimony, the stage is set by Mr. Damm's resistance to being arrested and to being handcuffed in the first instance. At the county jail, Mr. Damm refused to cooperate with booking procedure. Mr. Damm refused to leave the booking area and go to a cell as requested by the officers. Mr. Damm again resisted being handcuffed. Thereupon, Officer Sparkman forcibly removed Mr. Damm from the booking area and struck Mr. Damm, allegedly as many as six to eight times.

While § 1983 was enacted to remedy the *type* of abuse of official power as presented in the case at bar, *see Garrick v. City of Denver*, 652 F.2d 969, 972 (10th Cir.1981), and *Schiller v. Strangis*, 540 F.Supp. 605, 617 (D.Mass.1982), this Court does not believe the defendant's conduct, under the plaintiff's version of the facts, was sufficiently egregious to amount to a substantive denial of Mr. Damm's due process rights as a matter of law. Mr. Damm's recalcitrant behavior presented the need for Officer Sparkman to use force to move Mr. Damm to a cell; there was no permanent or residual injury inflicted; and there is no evidence from which to infer that Officer Sparkman's conduct was motivated by sheer malice. The defendant was justified in using force to secure Mr. Damm in a cell. This conduct is not an abuse of power that shocks the conscience of this Court. The Court believes that this conduct was not so egregious as to constitute an abuse of power condemned by the Constitution. As one court stated, "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a [person's] constitutional rights." *Schiller v. Strangis*, 540 F.Supp. 605, 616

(D.Mass.1982); *see also Polite v. Diehl,* 507 F.2d 119, 142 (3d Cir.1973) (Kalodner, J., dissenting) ("Simply stated, infliction of a black eye on one in custody by a policeman's fist, *standing alone,* is not a 'federal case.'"). The Court finds that, accepting as true Mr. Damm's recital of the facts, Officer Sparkman did not violate Mr. Damm's due process rights, and there exists no constitutional violation remediable under § 1983.

■ Mr. Damm further contends that his constitutional right to be informed of the nature and cause of the accusations against him, as secured by the Sixth and Fourteenth Amendments, was violated, thereby giving rise to his § 1983 claim. Mr. Damm testified, "The officer pulled me over, and told me that I had crossed the center line, and he wanted to see my driver's license." (Damm Depo. p. 59). Mr. Damm was aware that the field sobriety tests were administered to determine whether he was under the influence of alcohol. (Damm Depo. p. 63). Mr. Damm further testified, "[H]e told me he was going to arrest me for D.U.I." (Damm Depo. p. 64). Following Mr. Damm's arrest, he was transported to the City Police Station where a breathalyzer test was administered. (Damm Depo. pp. 67–68). Mr. Damm testified, "Well, the Breathalyzer test showed that it was .21, and they said that I was over the limit, and that they was going to put me in jail for the evening or hold me overnight for DUI." (Damm Depo. p. 69).

In light of Mr. Damm's testimony, this Court finds it inconceivable that Mr. Damm was unaware of the nature or the cause of the accusations against him. There are no issues of material fact with respect to the alleged violation of Mr. Damm's Sixth and Fourteenth Amendments. No reasonable trier of fact could conclude that Mr. Damm was unaware of the nature and cause of the accusations against him. Therefore, the Court must grant the defendants' motion for summary judgment with respect to the alleged Sixth and Fourteenth Amendments.

■ Finally, Mr. Damm alleges that he was deprived of his Fourteenth Amendment right to equal protection. The exact manner in which plaintiff was denied his right to equal protection is unclear. The most the Court can glean is from veiled allegations that Michael Sparkman was zealous in his disdain for intoxicated persons, and that Michael Sparkman somehow treated drunken drivers differently than other individuals charged with violation of other laws. Despite the total lack of clarity in Mr. Damm's position on this claim, it is clear that his claim of denial of equal protection must fail. There are absolutely no facts presenting any evidence of any discriminatory intent or invidious discrimination.

This Court finds, while viewing the facts in the light most favorable to the plaintiff, that as a matter of law Michael Sparkman did not violate Gerald Damm's right to be free of liberty deprivations without due process of law as secured by the Fourteenth Amendment, right to be informed of the nature and cause of the accusations against him as secured by the Sixth and Fourteenth Amendments, or right to equal protection as secured by the Fourteenth Amendment.

IT IS THEREFORE ORDERED this 22 day of May, 1985, that the motion for summary judgment of defendant Michael Sparkman should be and is hereby granted.