**Charlie ROCK, Jr., Plaintiff-Appellee,**

v.

**Roy McCOY and the City of Checotah, Oklahoma, a municipal corporation; Wesley Jackson Emerson a/k/a Doc Emerson, Defendants-Appellants.**

No. 84–2316.

United States Court of Appeals,
Tenth Circuit.

June 7, 1985.

Rehearing Denied July 30, 1985.

Weldon Stout of Kennedy, Kennedy, Wright & Stout, Muskogee, Okl., for defendants-appellants.

Michael E. Kelly of Muskogee, Okl., for plaintiff-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument

would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a), Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

■ Charlie Rock, a full-blooded Cherokee Indian, brought this civil rights action against the City of Checotah, Oklahoma, and two police officers working for the City, Roy McCoy and Wesley Jackson "Doc" Emerson. Rock claimed damages pursuant to 42 U.S.C. § 1983 because the defendant police officers had used excessive force in arresting him as a result of the City's negligent failure to train them properly, and because he had not received adequate medical attention in the City's jail after the officers' use of excessive force against him. Rock claimed violation of his Fourth, Sixth, Eighth, and Fourteenth Amendment rights. After trial to a jury, Rock was awarded actual damages of $2,100 and punitive damages of $1,000 against Roy McCoy; actual damages of $2,100 and punitive damages of $1,000 against "Doc" Emerson; and actual damages of $100,000 against the City of Checotah. The defendants' motion for judgment notwithstanding the verdict was denied, and the defendants appeal that denial. Before considering the defendants' specific contentions on appeal, the pertinent facts will be summarized. Since this appellate court will not retry facts, the jury's evaluation of conflicting evidence is conclusively binding on appeal. *Rodgers v. Hyatt*, 697 F.2d 899, 905 (10th Cir.1983). We therefore view the facts in the light most favorable to the jury verdict. *Hewitt v. City of Truth or Consequences*, 758 F.2d 1375 (10th Cir.1985).

Rock's first confrontation with the defendant McCoy came in the early morning hours of Sunday, August 29, 1982. Rock was at a truck stop in Checotah, eating breakfast. McCoy and another police officer were seated at another table, drinking coffee. Rock felt that the officers were looking at him and talking about him, so he approached McCoy and asked if the officer needed to talk to him. A scuffle ensued between Rock and McCoy; the parties' versions differ as to who was the aggressor. Tr. 56, 333–34. In any event, Rock was arrested, taken to jail, and released later in the morning.

Later that same Sunday, around 7:00 p.m., the police received a call from Mrs. Luke, Rock's mother-in-law. Mrs. Luke had apparently called the police because Rock was drunk and would not leave. Tr. 280. McCoy responded to the call, taking with him Robert Frost, the police dispatcher. As the police car containing McCoy and Frost approached the Luke residence, Rock's car passed, traveling in the opposite direction. The police car turned around and followed Rock's car to Rock's house. The police car pulled into the driveway behind Rock's car. McCoy got out, approached Rock's car, and demanded that Rock get out of the car. Apparently the door of Rock's car was jammed, making it necessary for Rock to swing around and kick the door open with his right foot. Tr. 61. McCoy then grabbed Rock by the feet, pulled him out of the car, and kicked him several times in the ribs, legs, and face. Tr. 62, 169, 189, 217. At this time Rock apparently blacked out. The kicking stopped when "Doc" Emerson, the other defendant police officer, arrived at the scene. The two officers then picked Rock up and placed him in the back seat of Emerson's police car. Then, with Rock's legs hanging out of the car, the car door was repeatedly slammed against Rock's shins. Tr. 173, 194, 221. Rock was again taken to jail. While in jail, the only treatment he received for his injuries consisted of having the blood on his nose cleaned away with a wet towel by a city employee. The next morning, Rock was released and taken home by Walter "Jack" Frost, the local Chief of Police.

The above recitation of the facts is based primarily on the testimony of Rock and of three eyewitnesses: Bonnie Bivens, Kim Bivens and Sheila Chandler. The testimony of the two defendant police officers was in substantial conflict on a number of points. For example, Emerson testified

that as he tried to shut the car door, the door came in contact with the bottom of Rock's feet, not his shins. Tr. 306–07. McCoy admitted kicking Rock in the face, but testified that he did so because Rock was going for McCoy's gun. Tr. 351–52. For our purposes, these factual conflicts were resolved by the jury's verdict.

 The Appellants' first contention is that the City cannot be liable under § 1983 because the City neither participated in nor sanctioned the officers' actions. The Appellants cite *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977), for the proposition that cities are liable under § 1983 only when the plaintiff's deprivation of rights was the result of a city policy or custom. In the instant case, the City obviously had no policy or custom of having its police officers slam car doors on suspects' legs. Similarly, there was no personal participation of city officials in Rock's beating. The *Monell* case does indeed stand for the proposition for which the Appellants cite it, but Rock does not allege that the City had such a custom. Neither does Rock allege the kind of *respondeat superior* theory that *Monell* proscribes.

Rock's theory is that the City is liable because it was grossly negligent in failing to train the officers, with the foreseeable result that beatings like those inflicted on

him would occur. The Appellants contend that the City's failure to train its officers constituted, at most, mere negligence, which is insufficient for § 1983 recovery. The simple answer to this contention is that the jury disagreed. After being properly instructed on the standard to which the City must be held,[1] without any objection thereto or to other instructions, the jury returned a verdict against the City. We hold that there was ample evidence to support that verdict—neither Emerson nor McCoy had received basic training at the Council of Law Enforcement Educational Training (CLEET), the State of Oklahoma's school where all Oklahoma police officers are trained.[2]

 The Appellants make similar contentions with regard to the City's liability for cruel and unusual punishment through its failure to provide adequate medical care. That is, they contend that the City, although perhaps negligent, did not exhibit the "deliberate indifference to serious medical need" necessary for § 1983 liability. Here again, the trial court gave the proper instruction.[3] We hold that there was sufficient evidence presented of the City's failure to treat Rock's injuries to meet the deliberate indifference standard. The jury obviously disagreed with the Appellants' position.

1. The pertinent instruction given by the trial court was:

 However, before a local governing body may be held liable under that law, you must find from the evidence:
 * * * * * *
 2. That the governing body implemented or executed such policy ... or custom with the intention to deprive another of their constitutional rights, or they knew, or should have known that such action would violate or deprive another of their constitutional rights. This amounts to a "gross negligence" instruction, which is generally held to be the standard necessary to hold a City liable under § 1983 for negligent training of its police force. *See, e.g., Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir.1983); *Hays v. Jefferson County, Kentucky*, 668 F.2d 869, 874 (6th Cir. 1982); *Leite v. City of Providence*, 463 F.Supp. 585, 590 (D.R.I.1978).

2. "Doc" Emerson had served on the force some 14 years, and had never been to the CLEET

school because he was exempt under Oklahoma's "grandfather" provision. Tr. 439. Roy McCoy had five to seven hours of advanced training, Tr. 21, but had not undertaken any of the 300 hours of basic training required before an Oklahoma police officer finishes his or her first year. Tr. 363–65, 436–37.

3. The pertinent instruction was "... the evidence must prove acts or omissions ... sufficiently harmful to evidence a deliberate indifference to serious medical needs of plaintiff." This instruction is consistent with *Bell v. Wolfish*, 441 U.S. 520, 534, 99 S.Ct. 1861, 1871, 60 L.Ed.2d 447 (1979) where the Supreme Court stated "[w]hat is at issue when an aspect of pretrial detention that is not alleged to violate any express guarantee of the Constitution is challenged, is the detainee's right to be free from punishment." *Accord: Hewitt v. City of Truth or Consequences*, 758 F.2d 1375 (10th Cir.1985); *Littlefield v. Deland*, 641 F.2d 729 (10th Cir.1981).

The Appellants contend that there was no "affirmative link" between the City's failure to train and the injuries suffered by Rock, such "affirmative link" being required by *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1975). The required "affirmative link" allegedly is missing because any police training the officers might have received would not have specifically told them not to slam car doors on suspects' legs. Again, this is a factual matter. The jury found against the Appellants, and there was evidence in the record to support the jury's conclusion.[4] In a related contention, the Appellants claim that the City cannot be liable because the misconduct of its officers was an "isolated event." Although this Court has held that an isolated incident of deprivation of constitutional rights by the police is not alone sufficient to raise an issue of fact as to whether training was inadequate, *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir.1979), the instant case is distinguishable. In *McClelland*, the plaintiff, by virtue of an isolated incident of police misconduct, sought, in effect, an inference of improper training, there being no direct evidence on the issue. Here, however, there was direct evidence that the police officers involved had undergone no training whatsoever. Thus, although not the general rule, there may exist certain circumstances whereby an isolated incident of police misconduct can render a city liable under § 1983.

■ The Appellants contend that the jury's award of actual damages against the City, in the amount of $100,000, was excessive and the result of passion and prejudice. This contention seems to be based primarily on the fact that the jury's award of actual damages against the individual defendants was $2,100 each. While the award against the City was indeed large in comparison to the award against the individual defendants, we cannot attribute passion and prejudice to the jury's verdict. The Appellants' focus on Rock's minimal medical expenses ignores the humiliating

effect that this incident had on him. The jury obviously believed that the City's gross negligence caused more damage to Rock than the actual physical violence inflicted by the individual defendants. Thus, we hold that the award was not "so excessive ... as to shock the judicial conscience and to raise an irresistible inference that passion, prejudice, corruption or other improper cause invaded the trial...." *Metcalfe v. Atchison, Topeka and Santa Fe Railway Company*, 491 F.2d 892, 898 (10th Cir.1974).

■ The Appellants' final contention is that the trial court abused its discretion in admitting photographs of Rock's legs because they were taken after a doctor had operated on them; thus, they did not portray the injuries at the time they happened. We see no abuse of discretion here. The pictures, although grotesque, were proper to demonstrate just how bad Rock's injuries were. The doctor's operation did not sever the causal connection between the acts of the defendants and the damages suffered by Rock.

WE AFFIRM.

---

**4.** For example, plaintiff's expert Professor Chapman stated that there was a high probability that had these officers been trained, they would have handled the situation differently and more effectively than they did. Tr. 267.