**Johnnie B. KENDEL, Plaintiff,**

v.

**Billie J. ORR, et al., Defendants.**

**Civ. A. No. 83–4292.**

United States District Court,
D. Kansas.

Oct. 7, 1985.

Fred W. Phelps, Jr., Topeka, Kan., for plaintiff.

Hal E. Desjardins, Reid Stacey, Topeka, Kan., for defendants.

## OPINION AND ORDER

THEIS, District Judge.

This is a civil rights action pursuant to 42 U.S.C. §§ 1981, 1983 and 1985 and 2000e, in which Johnnie Kendel, who was employed as a Homemaker Supervisor by the Department of Social and Rehabilitation Services ("SRS"), alleges abusive racial language, harassment, denial of promotion and a number of other improprieties. The case is currently before the Court on the motion of defendant Robert C. Harder, Secretary of SRS, for summary judgment.

The Court is familiar with the standards to be employed in considering motions for summary judgment. Summary judgment may be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Production Co.,* 639 F.2d 671, 672 (10th Cir.1981). Before summary judgment may be granted, the moving party must establish its entitlement to summary judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027, 1037 (10th Cir.1978). Summary judgment should not be granted if circumstantial evidence or factual inferences tend to establish genuine issues for trial. *Barber v. General Electric Co.,* 648 F.2d 1272, 1278 (10th Cir.1981). However, a party resisting a motion for summary judgment must do more than advance conclusory allegations; it must set forth specific facts showing that there is a genuine issue for trial. *Dart Industries, Inc. v. Plunkett Company of Oklahoma,* 704 F.2d 496, 498 (10th Cir.1983).

The following facts are uncontroverted. Harder administers seventeen area offices, oversees a total budget of approximately $484,277,254.00 and is responsible for a total staff of approximately 8,600 full and part time employees. An SRS employee who has a discrimination complaint may contact the SRS affirmative action office. In addition, a grievance mechanism is available. Harder is not available to hear grievances.

Harder receives hundreds of letters each year. Among the letters received by Harder was a letter from Kendel concerning her allegations of discrimination. Among the letters written by Harder was a letter to the chairperson of Kendel's grievance committee notifying her of her responsibilities as chair. Finally, Harder wrote a letter directly to Kendel on July 23, 1979, which contained the following language:

> I have received the committee report on the grievance hearing conducted on your request. It would appear that the other principals involved in your grievance were unable to refute your statement and it was the opinion of the committee that you did, indeed, have grounds for feeling aggrieved.

> We regret the unpleasantness you have experienced. We would encourage you to collaborate with the other individuals in developing better communications. On the basis of the committee's complete report, I am submitting the materials for administrative consideration to Mrs. Billie Orr, Director of the Winfield Area, and recommending some suggestions for assuring that situations such as this will not occur in the future.

Dk. no. 48, Exh. 2. Harder had no direct contact with Kendel other than the dis-

patch and receipt of the above letters. Furthermore, Harder has no recollection of plaintiff Kendel.

■ Harder has moved for summary judgment on three theories: that respondeat superior does not apply to civil rights actions, that Harder had no direct participation in any of the alleged constitutional violations and that Harder is entitled to qualified immunity. Plaintiff Kendel agrees with Harder that the doctrine of respondeat superior is not operable in a suit brought under section 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Kite v. Kelley*, 546 F.2d 334 (10th Cir.1976). Instead, Kendel argues direct participation on Harder's part in the discriminatory actions. The thrust of Kendel's contentions is that Harder failed to take steps to stop the discrimination when he had full knowledge it was occurring.

Two types of inaction have been recognized by the courts as cognizable under section 1983. The touchstone of the *Monell* decision was that a municipality was not liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. In *Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976), the Supreme Court held that a police commissioner and others were not responsible for the unconstitutional acts of police officers because the facts failed to demonstrate an "affirmative link" between the officers' misconduct and any official authorization or approval of the misconduct.

The Tenth Circuit has interpreted the "affirmative link" requirement of *Rizzo* to mean that "before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivation of which complaint is made." *Kite*, 546 F.2d at 337. In *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir.1979), the Tenth Circuit extended the acquiescence theory and held that "when the

defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm," liability under section 1983 would accrue. Thus, for supervisory inaction to form the basis of section 1983 liability, the plaintiff must establish either (1) an official policy or custom which results in constitutional violations, or (2) conduct by officials exhibiting acquiescence in unconstitutional actions.

Kendel does not assert a custom or policy resulting in constitutional violations. Kendel complains only that Harder was in a position that he knew "or should have known of the misconduct, and yet failed to act to prevent future harm." *McClelland*, 610 F.2d at 697. The *McClelland* decision, however, turned on a duty analysis: "the section 1983 language 'subjects, or causes to be subjected' is broader than direct personal involvement; it includes failure to perform a duty if that failure causes deprivation of protected rights." *Id.* at 696. The difficulty with the present summary judgment motion is that same problem that existed in *McClelland:* "The perimeters of [the] duty are uncertain and must be determined at trial." *Id.* at 697.

■ Harder would have the Court create a theory that absolves officials from liability under the passive acquiescence theory if they have established a grievance mechanism which the plaintiff has used, and the plaintiff does not complain about the mechanism itself. The Court specifically rejects such a rule. Instead, the Court believes a functional analysis of the workings of a grievance process and the relation of the official to that process is the appropriate test. At trial, Kendel will be required to establish that Harder had a duty to correct her grievance. Allegations of amorphous inaction without the specification of a correlative duty are insufficient to establish section 1983 liability. Harder may defend by showing the scope of the grievance committee's power to correct the gravamen of Kendel's complaint. In other

words, a number of particularly factual inquiries are left for trial: whether the grievance committee had the power to resolve Kendel's complaint and whether the committee appropriately used the power it had; the nature of Harder's duty to supervise the grievance procedure; and whether Harder discharged his duties by referring Kendel to the committee or whether Harder maintained a duty of oversight in the event of allegations of improprieties with the grievance mechanism.

■■■ Harder contends he is protected from liability due to good faith immunity. Under the test advanced in *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), government officials performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Whether the law in question was clearly established when the conduct complained of occurred is a legal issue to be resolved by the court. *Miller v. City of Mission, Kansas,* 705 F.2d 368, 375 n. 6 (10th Cir.1983). Good faith is an affirmative defense that must be pleaded and proved by the defendant official. *Tuttle v. Oklahoma,* 728 F.2d 456, 458 (10th Cir.1984).

In this instance, the laws against racial discrimination have been clearly established for years. However, as the Court noted above, whether Harder's conduct violated plaintiff's rights is a particularly factual question. Invocation of the defense of good faith immunity in these circumstances depends upon the resolution of a number of factual issues. Summary judgment on the issue of good faith immunity is therefore inappropriate. *McAnaw v. Custis,* No. 81–4137 (D.Kan., *unpublished,* March 14, 1983).

IT IS THEREFORE ORDERED that Harder's motion for summary judgment is hereby denied.