**John MEDCALF, Individually and as Administrator of the Estate of Michael Medcalf, Deceased, Plaintiff,**

v.

**STATE OF KANSAS; Patrick McManus, Secretary of Corrections for the State of Kansas; Leo Taylor, Director of the Kansas Reception and Diagnostic Center; Herbert Maschner, Director of the Kansas State Industrial Reformatory; Vincente B. Serapio, M.D.; and Jose F. Sintos, M.D., Defendants.**

No. 81–1290–K.

United States District Court, D. Kansas.

Jan. 27, 1986.

Ronald A. Lyon, Wichita, Kan., for plaintiff.

Timothy G. Madden, Asst. Atty. Gen., Kansas Judicial Center, Topeka, Kan., for State of Kan. defendants.

Darrell D. Kellogg & Lawrence M. Gurney, Wichita, Kan., for defendant Sintos.

James Z. Hernandez, Wichita, Kan., for defendant Serapio.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This action was filed by John Medcalf, individually and as administrator of the estate of his son, Michael Medcalf, seeking actual and punitive damages for defendants' failure to provide adequate, competent medical care to the decedent and for consequent violations of his civil rights under 42 U.S.C. § 1983, all arising from the care and treatment of Michael Medcalf during his incarceration at various Kansas penal institutions from June 4, 1980 through shortly before his death on October 20, 1980. Named defendants are the State of Kansas; Patrick McManus, Secretary of Corrections; Herbert Maschner, Director of the Kansas State Industrial Reformatory (KSIR); and Leo Taylor, Director of the Kansas Reception and Diagnostic Center (KRDC), all of which will be collectively referred to as the state defendants. Two

additional defendants are Dr. Jose Sintos, Director of Clinical Services at KSIR, and Dr. Vincente Serapio, a medical officer at KSIR, hereinafter referred to as the physician defendants.

The state defendants filed a motion for summary judgment raising the following issues:

Has plaintiff stated a claim, for violation of his civil rights through cruel and unusual punishment contrary to the Eighth Amendment, on which relief can be granted?

Does the Eleventh Amendment bar plaintiff's claims against the State of Kansas and the state officials in their official capacities?

Are the state officials entitled to be dismissed because the doctrine of *respondeat superior* has no application in a § 1983 suit?

The physician defendants followed with motions for summary judgment and partial summary judgment presenting these questions:

Has plaintiff shown any actual deprivation of Michael Medcalf's Eighth Amendment rights to be free from cruel and unusual punishment?

Are the physicians entitled to summary judgment on the grounds of qualified good faith immunity?

The Court concludes that although plaintiff has adequately stated a claim for relief, the Eleventh Amendment bars plaintiff's claims against the State of Kansas and the state officials in their official capacities. However, the unique facts and aggravated circumstances giving rise to this case are such that the physician defendants' motions are denied.

The facts of the case will be addressed as they pertain to the issues.

### The Sufficiency of the Complaint

The state defendants argue plaintiff fails to state a claim on which relief can be granted because he has not established Michael Medcalf was subjected to cruel and unusual punishment contrary to the Eighth Amendment during his incarceration.

The purpose of a motion under F.R. Civ.P. 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief. That provision must be read in conjunction with F.R.Civ.P. 8(a), which sets forth the requirements for pleading a claim in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6). 5 Wright & Miller, *Federal Practice and Procedure* § 1356 (1969). The allegations necessary to state a claim for relief will not be insufficient unless it appears beyond question plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Dewell v. Lawson*, 489 F.2d 877 (10th Cir. 1974).

In the context of this case, to state a cause of action under § 1983 plaintiff must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the prisoner's serious medical needs; a negligent, inadvertent failure to provide adequate medical care does not constitute the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). To constitute cruel and unusual punishment, improper or inadequate medical treatment must be continuing, must not be supported by any competent, recognized school of medical practice, and must amount to a denial of needed medical treatment. *Ramsey v. Ciccone*, 310 F.Supp. 600, 604 (W.D.Mo.1970). However, a complaint that an inmate was wrongfully denied medical care need not allege defendants consciously sought to inflict pain on the prisoner by withholding treatment in order to state a claim under § 1983. *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976).

Under these principles, a complaint does not state a cause of action where it evidences a series of sick calls by the inmate, examinations, diagnoses and medi-

cations, and a professional medical decision not to order x-rays requested by the inmate; in short, a mere difference of opinion between the inmate and the institution's medical staff. *Smart v. Villar*, 547 F.2d 112 (10th Cir.1976); *see also McCracken v. Jones*, 562 F.2d 22 (10th Cir.1977). Further, a complaint was found inadequate where an inmate merely alleged the prison hospital had been negligent in diagnosing his condition, on grounds plaintiff had not alleged deliberate indifference, and medical negligence alone is insufficient to state a claim under § 1983. *Tomarkin v. Ward*, 534 F.Supp. 1224 (S.D.N.Y.1982).

■ By contrast, the allegations of plaintiff's amended complaint in this case evidence more than mere negligence or a difference of opinion between the inmate and the institutions' medical officers. Plaintiff alleges Michael Medcalf was suffering from diagnosed medical problems at the time of his incarceration in June 1980, a condition of which the prison administration and medical staff was aware. Throughout the summer and early fall of 1980, Medcalf consistently complained of severe headaches, nausea and vomiting, the elemental and classic symptoms of a brain tumor according to plaintiff's expert witness. Although Medcalf was seen a number of times by the prison medical staff, primarily Dr. Serapio, and was admitted to the infirmary for periods of time, the plaintiff alleges Serapio failed to order tests on Medcalf's condition and wholly failed to diagnose a brain tumor, more specifically described as a grade IV glioblastoma multiforme, before it caused Medcalf's death. Alone that might appear to be a mere inadvertent failure to provide medical care, but plaintiff alleges it was negligent to the degree amounting to deliberate indifference of Medcalf's medical needs, an allegation supported by the deposition testimony of plaintiff's expert witness, himself a licensed physician. Thus, the complaint alleges (1) medical symptoms and an injury or illness so severe as to have necessitated immediate competent medical attention to preserve Medcalf's life; (2) medical treatment which was, as a result, needed rather than merely desired; (3) the utter denial of the proper medical care, an aggravated tortious act which may well have gone beyond "simple" negligence; (4) the continuing denial of necessary treatment throughout the period of Medcalf's incarceration; and (5) deliberate indifference to Medcalf's medical needs as the direct cause of his death. Sufficient allegations are raised concerning the degree of negligence exhibited by the physicians, and Serapio's overall fitness and competence to serve in the prison environment, for the Court to conclude plaintiff has adequately stated a claim for relief under § 1983 and the Eighth Amendment. *See Miranda v. Munoz*, 770 F.2d 255 (1st Cir.1985); *Rock v. McCoy*, 763 F.2d 394 (10th Cir.1985); and *Mullen v. Smith*, 738 F.2d 317 (8th Cir.1984); *see also* Annot., 28 A.L.R.Fed. 279 (1976).

### The Eleventh Amendment

■ Where a § 1983 action alleging a constitutional claim is brought directly against a state, the Eleventh Amendment bars a federal court from granting any relief on that claim. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 118–20, 104 S.Ct. 900, 918–19, 79 L.Ed.2d 67, 91 (1984), *citing Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). Plaintiff concedes defendants are correct in contending the Eleventh Amendment bars his claims against the State of Kansas as a governmental entity. Accordingly, the state is dismissed from this case.

■ Defendants McManus, Maschner and Taylor, the Secretary of Corrections and institutional directors respectively, also claim the Eleventh Amendment prohibits any liability from being imposed on them in their official capacities as agents of the State of Kansas. Although earlier cases permitted § 1983 actions seeking damages for violations of one's Eighth Amendment rights to be brought against state officials in their official capacities, *see McDaniel v. Rhodes*, 512 F.Supp. 117 (S.D.Ohio 1981), the law is now clear: § 1983 suits against

state employees in their official capacities are barred by the Eleventh Amendment. *Pennhurst State School & Hospital, supra; Quern v. Jordan,* 440 U.S. 332, 343–45, 99 S.Ct. 1139, 1146–47, 59 L.Ed.2d 358 (1979); *Maestas v. Bd. of Educ. of Mora Indep. Sch. Dist.,* 749 F.2d 591 (10th Cir. 1984); *Barger v. State of Kansas,* No. 620 F.Supp. 1432, 1436 (D.Kan.1985). As a result, § 1983 claims for violation of Eighth Amendment rights, and pendent state law claims, may not be brought against a state governor, corrections commissioner, and warden in their official capacities. *DeGidio v. Perpich,* 612 F.Supp. 1383, 1388–89 (D.Minn.1985); *cf. Hilliard v. Board of Pardons and Paroles,* 759 F.2d 1190 (5th Cir.1985) (members of state parole board held immune). Defendants McManus, Maschner and Taylor are entitled to dismissal of plaintiff's § 1983 claims and pendent state law claims against them in their official capacities.

### *Respondeat Superior*

The Secretary of Corrections and the institutional directors next argue they are entitled to summary judgment on plaintiff's claims because they did not personally participate in the medical decisions and treatment given Medcalf, and because the doctrine of *respondeat superior* cannot be used to hold them liable for the acts or omissions of their subordinates. In the course of the Court's preparation for its decision explaining alternate reasons these defendants could be held answerable to plaintiff's claims, it was startled to find the magistrate's order of April 1, 1982, dismissing these defendants from the suit in their individual capacities. The Court was even more astonished to find that order was based on a *joint* motion for dismissal filed by both defendants' and plaintiff's lawyers! Dismissal of these defendants in their individual capacities is incomprehensible under present law governing the facts of this case. The Court is at an utter loss to understand the reasons for counsels' motion. Under the circumstances, we have no hesitation in explaining the law; indeed, our obligation as a court of justice fairly demands we do so.

■ Suits against state officers in their individual capacities are not barred by the Eleventh Amendment. *Barger v. State of Kansas,* 620 F.Supp. 1432, 1437 (D.Kan. 1985), *citing Beck v. Kansas University Psychiatry Foundation,* 580 F.Supp. 527, 538 (D.Kan.1984), and *Wrenn v. State of Kansas,* 561 F.Supp. 1216, 1220 (D.Kan. 1983). Such suits proceed on the theory that when an officer acts unconstitutionally, "he is 'stripped of his official or representative character and is subjected to the consequences of his official conduct.'" *Barger, id.,* quoting *Ex parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). In *Barger,* Chief Judge O'Connor held that K.S.A. 75–6116, providing for payment by the state of any judgment for a civil rights violation against a state official in his individual capacity, does not present an Eleventh Amendment bar to maintenance of such suits. *Id.,* at 1437–38.

■ Unquestionably, the doctrine of *respondeat superior* does not operate in a suit brought under § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Kite v. Kelly,* 546 F.2d 334 (10th Cir.1978). However, supervisory officials sued in their individual capacities are answerable in a § 1983 action where there is a causal connection between their own actions and the claimed civil rights violation. *Wilson v. Attaway,* 757 F.2d 1227 (11th Cir.1985).

In *Kendel v. Orr,* 628 F.Supp. 326 (D.Kan.1985), Judge Theis explained the law governing a supervisor's personal liability in a § 1983 action. Plaintiff Kendel sued under 42 U.S.C. §§ 1981, 1983, 1985 and 2000e, alleging abusive racial language, harassment, denial of promotion and a number of other improprieties by her employer, the Kansas Department of Social and Rehabilitation Services (SRS). Defendant Robert C. Harder, Secretary of SRS, moved for summary judgment on many of the same grounds put forth by the present supervisory defendants: *respondeat superior* does

not apply; he had no direct participation in any of the alleged constitutional violations; and he was entitled to qualified immunity. Kendel was not pursuing liability on the basis of *respondeat superior*, but argued Harder directly participated in the discriminatory actions of his subordinates by failing to take remedial action. Judge Theis concluded plaintiff could recover on that theory.

Two types of inaction have been recognized by the courts as cognizable under section 1983. The touchstone of the *Monell* decision was that a municipality was not liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691 [98 S.Ct. at 2036]. In *Rizzo v. Goode*, 423 U.S. 362, 371 [96 S.Ct. 598, 604, 46 L.Ed.2d 561] (1976), the Supreme Court held that a police commissioner and others were not responsible for the unconstitutional acts of police officers because the facts failed to demonstrate an "affirmative link" between the officers' misconduct and any official authorization or approval of the misconduct.

The Tenth Circuit has interpreted the "affirmative link" requirement of *Rizzo* to mean that "before a superior may be held for acts of an inferior, the superior, expressly or otherwise, must have participated or acquiesced in the constitutional deprivation of which complaint is made." *Kite*, 546 F.2d at 337. In *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979), the Tenth Circuit extended the acquiescence theory and held that "when the defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm," liability under section 1983 would accrue. Thus, for supervisory inaction to form the basis of section 1983 liability, the plaintiff must establish either (1) an official policy or custom which results in constitutional violations, or (2) conduct by officials exhibiting acquiescence in unconstitutional actions.

Kendel does not assert a custom or policy resulting in constitutional violations. Kendel complains only that Harder was in a position that he knew "or should have known of the misconduct, and yet failed to act to prevent future harm." *McClelland*, 610 F.2d at 697. The *McClelland* decision, however, turned on a duty analysis: "the section 1983 language 'subjects, or causes to be subjected' is broader than direct personal involvement; it includes failure to perform a duty if that failure causes deprivation of protected rights." *Id.* at 696. The difficulty with the present summary judgment motion is that same problem that existed in *McClelland:* "The perimeters of [the] duty are uncertain and must be determined at trial." *Id.* at 697. *Kendel*, at 328–29. Judge Theis denied defendant's motion for summary judgment, concluding there remained a number of "particularly factual" inquiries for trial: the establishment and scope of Harder's duty; whether Harder discharged that duty by establishing an agency grievance committee; the nature of Harder's duty to supervise the grievance procedure; and whether Harder discharged his duties by referring plaintiff to the committee or whether Harder maintained a duty of oversight faced with allegations of improprieties with the grievance mechanism. *Id.* at 328–29.

The *Kendel* analysis mirrors that prescribed by the Tenth Circuit Court of Appeals in a case very similar to this. In an inmate's § 1983 action against the prison warden and the director of the department of corrections claiming denial of needed medical care, the Court held that regarding the supervisory officials' liability the proper approach is to analytically isolate, from what was there found to be the "malpractice" elements of the case, the basic issues of defendants' duties to plaintiff and breach thereof. *McCracken v. Jones*, 562 F.2d 22 (10th Cir.1977). In that case, after isolating the issues of duty and discharge, and reviewing plaintiff's evidence thereon, the Court upheld defendants' judgment notwithstanding the verdict concluding

there was *no* evidence defendants had not fully discharged their duty to provide plaintiff adequate medical care. *McCracken,* 562 F.2d at 25.

■ Regarding the precise nature of those duties, the Tenth Circuit has most recently held that the "deliberate indifference" to serious medical needs sufficient to impose liability under § 1983 may be shown either by the officials denying the prisoner access to medical personnel *capable of evaluating the need for treatment,* or by a pattern or practice of gross deficiencies in staffing, facilities, equipment or procedures. *Garcia v. Salt Lake Co.,* 768 F.2d 303 (10th Cir.1985) (emphasis added). Simply stated, although the doctrine of *respondeat superior* does not apply in a § 1983 action, a plaintiff may maintain a theory of direct liability against prison officials and supervisors in their individual capacities, based either on their personal participation in the injury or on their failure to properly hire, train, supervise, direct or control the actions of a subordinate who causes injury to an inmate. *Pearl v. Dobbs,* 649 F.2d 608 (8th Cir.1981); *Jones v. Denton,* 527 F.Supp. 106 (S.D.Ohio 1981).

In this case, plaintiff has evidence raising substantial doubts about the education, prior experience, qualifications, and overall fitness and competence of the attending physician, Dr. Serapio, to serve as a prison doctor. That evidence includes the facts he was educated outside this country and that his experience prior to being hired by the state was limited to some years in a tuberculosis clinic, also outside the country. One of plaintiff's contentions in the pretrial order is that defendants McManus, Maschner and Taylor were negligent in considering, reviewing and monitoring the qualifications and practices of both physicians. This evidence and allegation calls into question whether defendants adequately discharged their duties to carefully hire, train and supervise adequate medical personnel capable of evaluating and meeting the reasonable medical needs of the inmate population.

Michael Medcalf had a basic right to receive needed medical care while confined. Necessarily, defendant Secretary of Corrections and institutional officials labored under an affirmative duty to make available to the inmates that level of medical care reasonably designed to meet both the routine and emergency health care needs of the inmate population. *Battle v. Anderson,* 376 F.Supp. 402, 424 (E.D.Okla.1974). The reckless or callous indifference needed to show deliberate indifference to an inmate's medical needs may be established by showing there was no reasonable access to medical personnel properly qualified to diagnose and treat illnesses and disturbances. *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 763 (3d Cir. 1979); *Harding v. Kuhlmann,* 588 F.Supp. 1315 (S.D.N.Y.1984); *cf. Ramos v. Lamm,* 485 F.Supp. 122, 142–43 (D.Colo.1979), aff'd in part, rev'd and remanded on other grounds, 639 F.2d 559 (10th Cir.1980) (where one of the significant reasons for finding unconstitutional the totality of conditions at the Colorado State Penitentiary was the inadequately trained medical staff).

Particularly noteworthy in this regard is the First Circuit's recent opinion in *Miranda v. Munoz,* 770 F.2d 255 (1st Cir. 1985). In that case an epileptic prisoner was denied adequate medical care while incarcerated. He became critically ill as a result and died three days after being transferred to a local hospital. His mother and brother brought a § 1983 action against the jail physician (a specialist in obstetrics and gynecology), warden, assistant warden, and supervisory officials of the Puerto Rican corrections system. The supervisory officials were granted a directed verdict at the close of evidence, and the jury returned a verdict for plaintiffs against the remaining defendants. On appeal, the First Circuit affirmed the jury verdict, but vacated the directed verdict in favor of the supervisory officials and remanded the case for a new trial on their liability. *Munoz,* 770 F.2d at 257.

Concerning plaintiff's verdict against the physician, warden, and assistant warden,

the First Circuit acknowledged that in cases where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to raise claims sounding in state tort law to a constitutional level. Nevertheless, the Court recognized, in certain cases the treatment received may be so clearly inadequate as to amount to a refusal to provide essential care. The evidence in that case showed each of those three defendants had some knowledge of the inmate's epileptic condition and knew he continued to exhibit symptoms, but failed to do anything to determine the precise causes of his attacks or prevent future attacks. The Court concluded the jury could properly determine it to be a case of medical attention so inadequate as to amount to deliberate indifference on the part of those defendants, on the ground they ignored a clear warning the medical treatment they provided the inmate was inadequate, allowing him to deteriorate beyond recovery. *Munoz*, 770 F.2d at 259.

The First Circuit's discussion of the supervisory officials' liability merits detail:

Because there is no *respondeat superior* liability under § 1983, ... supervisory officials may be found liable only on the basis of their own acts or omissions. Supervisors need not have actual knowledge of the specific incident at issue, however, if they had the power and duty to alleviate the conditions which led to the violation.... We agree with the description of supervisory liability given by the Fourth Circuit in *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir.1984):

"The outer limits of liability in any given case are determined ultimately by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked."

\*　　\*　　\*　　\*　　\*　　\*

In this case, the defendants whose liability we are considering are responsible for administration of the entire prison system, not just of a single institution. In addition, Puerto Rico law provides that the Correctional · Administration shall have the duty and power

"[t]o establish programs to offer *adequate* medical care and hospital services intended to prevent diseases and the diagnosis, treatment and rehabilitation of the patient.

The services may be furnished, whenever the circumstances so require, outside Administration facilities under the necessary security measures.

*Detailed records* of medical examinations and the health condition of the patient shall be kept (emphasis added)". P.R.Laws Ann. Tit. 4, § 1112(f) (1978).

We believe a jury could have found that each of the four defendants was charged with carrying out this mandate, and that each thus had the duty to ameliorate the medical conditions which led to Rosario Cristobal's death.... Certainly, Irba M. Cruz de Batista, the director of the Correctional Administration, had such a duty....

Moreover, we can not say as a matter of law that the circumstances surrounding Rosario Cristobal's death represented a "sporadic incident[ ]" over which these officials " 'might properly claim to have no knowledge or control' ".... The testimony at trial indicated that the conditions surrounding Rosario Cristobal's medical treatment were as much a matter of central administration policy as of local reaction to his particular case.... [T]here was sufficient evidence to suggest that Rosario Cristobal's treatment was not an unexpected aberration from the normally adequate medical care provided in Puerto Rico's prisons, but an extreme example of the routinely poor conditions there. As such, these four defendants could be held liable for his death.

Although we have little trouble in determining that a reasonable jury could have found power and duty on the part of these defendants, we believe it is a much closer case on the issue of their deliberate indif-

ference to Rosario Cristobal's medical needs. Rodriguez Fraticelli, Cruz de Batista and Diaz Delgado all testified that they were attempting to improve medical conditions in Puerto Rico's prisons, and Castro Penaloza's testimony suggested that his failure to act may have been based on the good faith belief that others were taking care of the problems. *Yet, we can not say as a matter of law that no jury would have imposed liability on these officials,* whose credibility is beyond our scrutiny. Each had been in office for some time before Rosario Cristobal's detention at Arecibo Jail, and yet conditions arguably were still inadequate. *A jury could well decide that each bore some responsibility for contracting with a specialist in obstetrics and gynecology to provide only eight hours of medical care per week for 235 prisoners, and that this was sufficient in itself to establish the deliberate indifference of each of them to the special needs of an epileptic patient like Rosario Cristobal.* We therefore conclude that the directed verdicts must be reversed, and the case remanded for a new trial on the issue of these four defendants' liability.

*Munoz,* 770 F.2d at 260–62 (citations omitted; emphasis both added and in original). Lastly, the First Circuit noted that was not a case in which it would be inconsistent to find liability on the part of both the local prison officials and the central prison administration: "A jury could have found that it was the combination of conditions authorized by the Correctional Department and specific actions taken by the Arecibo Jail officials which caused plaintiff's injury." *Id.* at 261, n. 4.

In a § 1983 action, the question whether supervisory officials' failure to properly hire, train and supervise subordinates amounts to gross negligence is a question of fact to be decided by the jury. *Rock v. McCoy,* 763 F.2d 394 (10th Cir. 1985). Another question of fact for the jury is whether there is a causal connection, the *Rizzo v. Goode* "affirmative link", between the officials' acts and omissions and plaintiff's injuries. *Rock,* 763 F.2d at 398. Regarding the present defendants'

contentions this case is at most an isolated instance of misconduct for which they cannot be held liable, *Rock* held that although not the general rule, there may exist certain circumstances whereby an isolated incident of misconduct can render supervisory officials liable under § 1983. *Id.* In that case there was direct evidence the police officers had undergone no training; in this case there is direct evidence calling into question the qualifications and competence of Dr. Serapio and the supervision he was given. On the question of an "isolated incident," we also note the following:

> Defendants' argument that the circumstances in question, because they "at best" establish "a single isolated incident of mistreatment" ... cannot constitute actionable cruel and unusual punishment lacks any basis in law or logic. Nor surprisingly, no case cited by defendants supports the unlikely proposition that the protections of the Eighth Amendment do not apply where there is no pattern or practice of abusive conduct. Indeed, leading cases in this area frequently involve a challenged past, discreet act of alleged cruelty. See, e.g., *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). While a pattern may be required to support class-based suits seeking broad, structural relief, no such systematic deficiencies or acts need be adduced to support a single claim of mistreatment.... And the distinct question of whether superior officers should be liable for single acts of mistreatment ... must be answered with reference to the general principles of supervisory liability governing § 1983 cases ... not the substantive standards imposed by the Eighth Amendment.

*Ferola v. Moran,* 622 F.Supp. 814, 820 n. 1 (D.R.I.1985) (citations omitted).

Finally, the state defendants argue that regarding the decision to hire Dr. Serapio, they were entitled to rely on a limited license to practice issued to him by the Kansas State Board of Healing Arts, and that regarding his supervision they were entitled to rely on the acts and judgment of

Dr. Sintos. *Kendel v. Orr, supra,* makes it clear that where officials in these positions, laboring under a personal duty to preserve and protect the constitutional rights of a class of persons, choose to rely on the opinions and acts of others it presents questions of fact whether that reliance was reasonable and whether, in so doing, the officials satisfactorily discharged their *own* duties.

In conclusion, plaintiff would not be relying on the doctrine of *respondeat superior* in seeking damages from these state defendants in their individual capacities. Each of these men labored under a duty to ensure Michael Medcalf received adequate medical attention to his needs: to provide competent medical personnel, procedures, and treatment; to keep adequate records; to continually supervise the institutions and personnel in these regards; and much more. *See* K.S.A. 75–5210(c), –5221, –5249, and –5252(c); K.A.R. 44–5–112 (1980 Supp.). The question whether defendants satisfactorily discharged these duties, or whether they failed to the degree amounting to deliberate indifference to Medcalf's medical needs, would clearly have been a question for the jury.

That said, the Court recognizes, albeit with no small sense of frustration, the law of the case is these defendants have already been dismissed in their individual capacities. There is no challenge to the magistrate's order before the Court, nor is it conceivable such a challenge could be maintained given that plaintiff's counsel joined in the request for that dismissal. These defendants are not liable in their official capacities, and under the circumstances the Court is left with no choice but to conclude they are no longer a part of this suit in their individual capacities. The claims against them are dismissed in their entirety.

### The Physician Defendants

Doctors Sintos and Serapio argue they are entitled to summary judgment on plaintiff's § 1983 claims for the reason plaintiff cannot show any deprivation of Medcalf's constitutional right to be free from cruel and unusual punishment under the Supreme Court's opinion in *Estelle v. Gamble, supra,* requiring a showing of deliberate indifference to an inmate's medical needs. More specifically, these defendants insist plaintiff cannot show deliberate indifference in part because Medcalf received medical treatment on a number of occasions; his disagreement over the treatment afforded does not establish cruel and unusual punishment; and that, at best, plaintiff has shown mere negligence, which does not amount to cruel and unusual punishment under *Estelle v. Gamble.*

In considering this motion, we must review the pleadings in a light most favorable to plaintiff, the nonmoving party. The burden is on defendants to show there remain no questions of material fact and that they are therefore entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). That burden is somewhat heightened where, as here, constitutional and other questions of significant public import may be involved, as these especially should not be decided on an inadequate factual basis. *Guglielmoni v. Alexander,* 583 F.Supp. 821 (D.Conn.1984); 10A Wright & Miller, *Federal Practice and Procedure,* §§ 2732, 2732.2. In an action such as the present one, genuine issues of material fact relating to whether the inmate received competent and adequate care will preclude summary judgment for the prison doctors. *Murrell v. Bennett,* 615 F.2d 306 (5th Cir.1980); *Jones v. Denton,* 527 F.Supp. 106 (S.D.Ohio 1981).

The Eighth Amendment prohibits not merely physically barbarous punishment but any penal measures that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency. Under *Estelle v. Gamble,* the infliction of unnecessary suffering is inconsistent with those standards and is therefore proscribed by the Eighth Amendment. *Capps v. Atiyeh,* 495 F.Supp. 802 (D.Ore.1980). The term "cruel and unusual punishment" connotes something inhuman,

barbarous, violative of the basic concepts of decency and so foul as to shock the court's sensibilities. *Clappier v. Flynn*, 605 F.2d 519 (10th Cir.1979). Because a prisoner cannot secure for himself needed medical treatment from an institution or practitioner of his choice, prison authorities have a constitutional duty to provide that needed medical treatment. From that premise flows the principle that prison authorities' or prison doctors' *reckless disregard, callous inattention*, or *gross negligence* which results in a denial of needed medical treatment is the legal equivalent of an *intentional* denial of that treatment, violating the Eighth Amendment. *Ramsey v. Ciccone*, 310 F.Supp. 600, 605 (W.D.Mo. 1970).

Defendants Sintos and Serapio contend plaintiff has established only a mere inadvertent failure to provide him needed medical care, simple negligence which is not actionable in a § 1983 claim. Again, the *Estelle* deliberate indifference standard does not encompass negligent care or mere differences in opinion between the inmate and the medical staff. *Lee v. McManus*, 543 F.Supp. 386 (D.Kan.1982); *Robbins v. South*, 595 F.Supp. 785 (D.Mont.1984). But those two principles do not provide these defendants the solace they seek for the following reasons.

First, there is a patent conflict between defendants' characterization of these events as "simple negligence", and the conclusion rendered by plaintiff's expert witness, who labeled their failure to properly diagnose Medcalf's symptoms as "gross negligence". Thus, there is a remaining question of fact whether defendants' negligence was "simple", i.e., an inadvertent and unintentional act resulting from defendants' inattention, or whether the negligence was "gross", i.e., an extreme and unjustifiable failure to render the necessary care. The facts are not sufficiently developed at this point for us to decide this issue as a matter of law. The Tenth Circuit has recognized that an allegation of gross negligence in a similar context raises a question of fact for presentation to the jury. *Rock v. McCoy*, 763 F.2d 394, 397 (10th Cir.1985).

Secondly, defendants' reliance on the principle that a mere difference of opinion with the medical staff's decision is not actionable is misplaced in this case. The "disagreement" at issue is *not* between inmate Medcalf and the defendants, but between plaintiff's expert witness, a licensed physician in his own right, and the defendants. A plaintiff's case for denial of medical treatment is not frivolous where he has medical evidence supporting his difference of opinion. *Lee v. McManus*, 543 F.Supp. at 391.

Defendants also rely on the fact Medcalf did receive *some* medical care prior to his death, although perhaps not related to his actual illness. Rather than establishing their nonliability, this merely relates back to the factual questions concerning the aggravated nature of their negligence. For purposes of determining whether an Eighth Amendment violation has occurred,

> ... [*Estelle v.*] *Gamble* does not necessarily excuse one episode of gross misconduct merely because the overall pattern reflects general attentiveness. The issue is whether the questioned conduct is cruel and unusual because it involves deliberate indifference, or something more than a medical judgment call, an accident, or an inadvertent failure.

*Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir.1980). Thus, contrary to defendants' contentions, the fact Medcalf received some medical care would not preclude a jury finding of liability if it concludes defendants were grossly negligent in failing to test for, diagnose, and treat the brain tumor. That fact certainly cannot now be relied on as grounds for summary judgment in their favor.

Also bearing on this issue is plaintiff's evidence regarding the background, education, fitness and competence of Dr. Serapio to discharge his duties to provide adequate medical care to the inmates. Further, plaintiff can show that Dr. Serapio was ultimately discharged from that position as a result of his apparent failure to provide adequate medical care to at least

one other inmate. In this light, consider the Second Circuit's remarks:

> ... while a single instance of medical care denied or delayed, viewed in isolation, may appear to be the product of mere negligence, repeated examples of such treatment bespeak a deliberate indifference by prison authorities to the agony engendered by haphazard and ill-conceived procedures. Indeed it is well-settled in this circuit that "a series of incidents closely related in time ... may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners."

*Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir. 1977), quoting *Bishop v. Stoneman,* 508 F.2d 1224 (2d Cir.1974).

In conclusion, there remain a number of genuine issues of material fact regarding the adequacy of the medical care received by Medcalf. The physicians have not established their right to summary judgment as a matter of law.

### *Qualified Immunity*

The physicians next contend they are protected from liability under qualified good faith immunity. Under *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), government officials performing discretionary functions "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Whether the law in question was clearly established when the conduct at issue occurred is a legal issue to be resolved by the Court. *Miller v. City of Mission, Kansas,* 705 F.2d 368, 375 n. 6 (10th Cir.1983); *Kendel v. Orr,* 628 F.Supp. 326, 329 (D.Kan.1985).

Unquestionably, Medcalf's right to adequate medical care during his incarceration was well established long before the time period at issue in this suit. In identical circumstances, the First Circuit has concluded defendants were not entitled to invoke the *Harlow* doctrine of qualified immunity. *Miranda v. Munoz,* 770 F.2d 255, 269 n. 2 (1st Cir.1985). The Court reserves for decision at the close of evidence the question whether these defendants should similarly be denied this defense.

Assuming the claims of good faith immunity are properly lodged in this case, they are nevertheless premature at this point in the proceedings and remain to be proven at trial. Summary judgment on the issue of good faith immunity is inappropriate because invocation of the defense depends upon the resolution of a number of factual issues. *Kendel v. Orr, id.,* at 329. On very similar facts in *Guglielmoni v. Alexander,* 583 F.Supp. 821 (D.Conn.1984), faced with defendants' motion for summary judgment, the Court held it could not declare defendants were entitled to good faith immunity as a matter of law where they had not shown their conduct could not be found deficient under prevailing Eighth Amendment standards. The focus of the good faith immunity inquiry necessarily centers on individual motives and reactions; thus, evidence tending to prove deliberate or callous indifference is the same evidence used to defeat the good faith defense. *Webster v. Foltz,* 582 F.Supp. 28, 33 (W.D.Mich.1983).

IT IS ACCORDINGLY ORDERED this 27th day of January, 1986, plaintiff's § 1983 claims and pendent state law claims against the State of Kansas, Patrick McManus, Herbert Maschner, and Leo Taylor are dismissed. Defendants Sintos' and Serapio's motions for summary judgment and partial summary judgment are denied in their entirety.