**Joe Willie JONES, Plaintiff,**

v.

**Robert D. HANNIGAN, et al., Defendants.**

No. 95–3249–KHV.

United States District Court,
D. Kansas.

March 26, 1997.

Joe Willie Jones, Wichita, KS, pro se.

Gary M. Austerman, Mary T. Malicoat, Klenda, Mitchell, Austerman & Zuercher, Wichita, KS, for Louisa Osborn, P.H.S.

Michael R. O'Neal, Matthew L. Bretz, Gilliland & Hayes, P.A., Hutchinson, KS, for Owen Carper, P.H.S., D. Hanson, P.H.S.

### *Memorandum and Order*

VRATIL, District Judge.

This matter comes before the Court on the motion for summary judgment contained in the *Answer of Louisa Osborne* (Doc. # 54) filed April 15, 1996, and on *Defendants' Motion for Summary Judgment* (Doc. # 56) filed April 19, 1996, by defendants Owen Carper and David Hanson.[1] Plaintiff brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights in connection with his confinement at Hutchinson Correctional Facility ("HCF"). Specifically, plaintiff claims that defendants exhibited deliber-

---

1. In compliance with an order by this Court, defendants submitted a written report (Doc. # 45) filed March 20, 1996, pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978), in order to clarify the claims set forth in plaintiffs complaint and to develop more fully the factual record. Plaintiff has responded to the Martinez report and to defendants' motions for summary judgment.

ate indifference to his serious medical needs and failed to provide him adequate and necessary medical care, thereby inflicting cruel and unusual punishment in violation of the Eighth Amendment.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). When deciding a summary judgment motion, the court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The existence of factual disputes is not an automatic preclusion to the grant of summary judgment. *Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. A "material" fact is one "that might affect the outcome of the suit under the governing law," and the issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. The initial burden of demonstrating want of a genuine issue of material fact rests with the movant. Showing a lack of evidence to support the nonmovant's case discharges this burden. *Celotex Corp. v. Catrett* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). After the movant has properly supported a summary judgment motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and not rely upon allegations or denials contained in the pleadings. *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514.

The movant is entitled to judgment as a matter of law should the nonmoving party insufficiently establish an essential element of a claim for which the nonmovant has the burden. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. Rule 56 should be construed to satisfy one of its principal purposes, namely, to segregate and eliminate factually unsupported claims and defenses. *Id.*

## FACTS[2]

Defendants Owen Carper and David Hanson are physicians employed by Prison Health Services, which renders medical care to inmates at HCF. Both doctors treated plaintiff during his incarceration there. Defendant Louisa Osborne is the Director of Nursing at HCF. As such, she oversees the medical nursing staff at HCF. She did not personally treat plaintiff during his incarceration at HCF.

Plaintiff arrived at HCF on February 8, 1995. At that time, he was medically classified as "Class I," meaning that he was able to undertake any work assignment and to live in any standard cellhouse. On April 1, 1995, plaintiff experienced groin pains and noticed a swelling in his right testicle. He went to morning sick call, and clinic staff diagnosed his condition as epididymitis. Plaintiff received doxycycline (an antibiotic) and an athletic supporter. Clinic staff told him to ice the area and placed him on lay-in for one day. Clinic staff saw plaintiff again on April 2 and April 4, 1995, for continued pain and swelling of his right testicle. Each time, they continued the antibiotic treatment and placed plaintiff on lay-in status for an additional day.

On April 11, 1995, plaintiff was still complaining of discomfort, and clinic staff recommended referral to a urologist. The Care Management Committee at HCF reviewed plaintiff's medical chart on April 13, 1995, and decided that Dr. Carper should evaluate plaintiff. Dr. Carper did so on April 17, 1995. He prescribed Bactrim (another antibiotic) for plaintiff to take twice daily for fourteen days. He also ordered plaintiff to continue using the athletic supporter.

The Care Management Committee again reviewed plaintiffs chart on April 19, 1995, and noted that Dr. Hanson should reevaluate plaintiff's right testicle after he had completed the 14–day Bactrim cycle. Dr. Hanson did so on May 2, 1995, and found that a mass

---

**2.** The facts set forth in this memorandum and order are either uncontroverted or, where controverted, construed in the light most favorable to plaintiff. Immaterial facts and factual allegations not properly supported by the record are omitted.

was still present in plaintiff's right testicle. On May 3, 1995, Dr. Hanson recommended that plaintiff be referred to a urologist. Dr. Hanson also prescribed Kenalog cream to be applied for two weeks. The Utilization Management Director approved Dr. Hanson's urology referral for plaintiff on May 5, 1995.

On May 12, 1995, plaintiff went to Halstead, Kansas, for an appointment with Dr. Gary Eastes, a urologist. Dr. Eastes diagnosed plaintiff's condition as "resolving epididymitis" because the swelling had somewhat receded since plaintiff had initially complained of his condition. The doctor noted that the epididymitis was persisting, however, and he recommended following the patient closely, continuing the use of scrotal support, and restricting strenuous activity for one month. Dr. Eastes discussed plaintiffs condition with Dr. Carper, who agreed to follow plaintiff's condition closely and report any change to Dr. Eastes.

In accordance with Dr. Eastes's recommendation that plaintiff restrict strenuous activity for one month, defendants completed a "Temporary Medical Work Restriction" form for plaintiff, effective from May 12, 1995 to June 12, 1995. The form noted that plaintiff should avoid strenuous activities for one month. It stated that he should do no team sports, running, jumping, jogging or weight lifting, but that he could walk on a track and do stretching exercises or light calisthenics. The form did not include any work restrictions.

Plaintiff claims that he informed his work supervisor of his medical restriction against strenuous activities and gave the supervisor a copy of the medical restriction form. Despite this information, the work supervisor ordered plaintiff to perform his job duties, which included lifting objects weighing more than 100 pounds.[3] On May 19, 1995, plaintiff injured his back and pulled his groin while attempting to lift a table top at work in the furniture refinishing unit at HCF. When he attempted to resume his duties, he felt nauseous and had sharp pains in his groin area, and he was taken to the clinic for emergency examination by Dr. Carper. Dr. Carper examined plaintiff and prescribed Norflex and Motrin for pain and swelling. He also ad-

vised plaintiff to apply ice to his back. Dr. Carper admitted at that time that it had been a mistake to allow plaintiff to continue to work and that the restrictions ordered by Dr. Eastes should have included a work restriction as well as a sports and recreation restriction. Dr. Carper released plaintiff to his dorm room later that day with a work and sports restriction.

Plaintiff returned to the clinic twice each day on May 21, 22 and 23, 1995, for treatments with a heating pad pursuant to Dr. Carper's orders. On May 24, 1995, plaintiff received a ten-day prescription for Percogesic to alleviate the continued pain in his lower back. Plaintiff's medical records for that day noted his condition of chronic epididymitis.

On May 26, 1995, plaintiff complained of continuing back pain. Clinic staff instructed him to use Tylenol and heat packs along with the Percogesic, and to come to sick call if such treatment did not help relieve the pain. On June 1 and 3, 1995, plaintiff went to the clinic complaining of sharp pain in his groin and lower back. His medical records for June 1 noted a lump in his right testicle, which was tender to palpation. Clinic staff scheduled x-rays for June 5, 1995.

On June 5, 1995, in addition to taking the x-rays, clinic staff prescribed Motrin for five days. On June 6, 1995, plaintiff returned to the clinic for evaluation of his constant back pain, and he complained that the Motrin was not helping. His medical records for June 7, 1995, noted that plaintiff has chronic epididymitis and some tenderness in his lower back. Clinic staff prescribed Indocin (an anti-inflammatory medication). Leavenworth–Kansas City Imaging PA read plaintiff's x-ray results on June 12, 1995, and noted early degenerative changes in two of plaintiff's disc spaces.

On June 10, 1995, plaintiff went to the clinic to complain of back pain and to report that the mass in his testicle was larger. Clinic staff issued him a hot/cold bag, continued his medications and told him to make sick call. On June 13, 1995, plaintiff went to sick call, complaining of pain and swelling in his right testicle. He stated that a hard knot

---

**3.** The work supervisor is not named as a defendant in this action.

in his testicle would move around but would not dissolve and that it was increasing in size. Clinic staff instructed plaintiff to apply cold packs to the area for 20 minutes and take two Tylenol every four hours.

When clinic staff saw plaintiff on June 14 and 15, 1995, he complained of a swollen testicle, said he was having spasms and sharp pains, and stated that the Indocin prescribed on June 7, 1995, was not doing anything to help. Dr. Hanson continued plaintiff's Indocin prescription and scheduled an appointment for July 5, 1995, to review medications.

On June 22, 1995, plaintiff came to the clinic to have medical staff reevaluate his testicle and back. He complained of persistent and worsening pain in his testicle. The examining physician consulted with Dr. Eastes, the urologist in Halstead, to discuss options and treatments. Dr. Eastes stated that if the Bactrim regimen failed to relieve plaintiff's symptoms, plaintiff might benefit from surgical resection of the epididymitis area. Plaintiff was then prescribed Motrin for ten days.

On June 28, 1995, the Care Management Committee reviewed plaintiff's chart and recommended that referral to a consulting urologist be considered because of plaintiff's history and recurrent pain. At that time, plaintiff was prescribed Cipro for 30 days.

On June 29, 1995, defendants classified plaintiff as "Class II" medical, restricted him from lifting, and noted that he was unfit for any work assignment. They continued his Motrin prescription for pain at that time.

On July 17, 1995, plaintiff went to sick call, complaining of groin pain and back spasms. Dr. Carper prescribed Motrin for 19 days.

On August 2, 1995, plaintiff was transferred to El Dorado Correctional Facility ("EDCF"), with a "Class III" medical classification. His chart noted the need for a follow-up appointment as soon as possible.

Defendants sent plaintiff's medications and x-rays to EDCF along with plaintiff.[4]

Dr. Hanson testified in his affidavit that plaintiff suffers from chronic epididymitis and a back injury and that the course of treatment which defendants prescribed—including rest and work restrictions, antibiotics, and heat and cold packs for both the groin and back conditions—is an appropriate medical treatment that is within accepted medical practice for such conditions. Plaintiff has offered no evidence to the contrary.

## DISCUSSION

Plaintiff claims that defendants failed to evaluate and treat his epididymitis promptly, thereby subjecting him to pain, suffering and an additional injury to his back. He also claims that defendants were deliberately indifferent to his serious medical needs. Plaintiff complains that he was treated by general practitioners, and even nurses, when treatment by a specialist would have been more appropriate. He also complains that on occasion, nurses decided whether he should be seen by a doctor at all. Plaintiff claims that he needs physical therapy and that he needs to see a back specialist as well as a urologist. Plaintiff claims that defendants' conduct constitutes a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

The Eighth Amendment provides, "Excessive bail shall not be required, ... nor cruel and unusual punishments inflicted." U.S. Const.Amend. VIII.

> The treatment a prisoner receives and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. A prison official violates the Eighth Amendment when two conditions are met: 1) the depri-

4. Plaintiffs medical records indicate that his epididymitis and his back condition continued in a similar pattern while he was confined at EDCF and that medical staff at EDCF employed treatment methods similar to those used by HCF medical staff. Through a supplement to his complaint (Doc. #20) filed September 19, 1995, plaintiff attempted to amend his complaint to name six new defendants at EDCF and to allege

similar claims of deliberate indifference and inadequate medical care against them. In its *Order* (Doc. #41) filed February 22, 1996, however, the Court found that plaintiff had failed to state a claim against the six EDCF defendants under 42 U.S.C. § 1983, and it dismissed his allegations. Consequently, the Court does not discuss here the factual allegations relating to plaintiff's condition and treatment at EDCF.

vation alleged is sufficiently serious—the prison official's act or omission results in the denial of the minimum civilized measure of life's necessities; and 2) the prison official acts with "deliberate indifference"—he knows of and disregards an excessive risk to inmate health and safety. *Brown v. Nix,* 33 F.3d 951, 954–55 (8th Cir. 1994), citing *Farmer v. Brennan,* 511 U.S. 825, 831–33, 837, 114 S.Ct. 1970, 1976, 1979, 128 L.Ed.2d 811 (1994).

■ When prison officials are deliberately indifferent to an inmate's serious medical needs, they violate the inmate's right to be free from cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). For plaintiff to prevail on his claim of deliberate indifference, he must meet the two-prong test articulated by the Supreme Court in Estelle, which requires that a prisoner's medical needs be serious and also requires deliberate indifference on the part of prison officials. *See Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981).

■ A medical need is serious if it has been diagnosed by a physician as one requiring treatment or if it is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Id.* at 575. The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; and the existence of chronic and substantial pain are all indications that a prisoner has a "serious" need for medical treatment. *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992), cited in *Riddle v. Mondragon,* 83 F.3d 1197, 1202 (10th Cir.1996).

■ Plaintiff's epididymitis and back injury, and his consequent need for medical treatment, were undoubtedly serious under the above standards. Both had been diag-

nosed and treated over time, and a lay person could be expected to recognize the need for such medical attention. Furthermore, the record amply demonstrates that plaintiffs condition affected his daily activities· (*e.g.,* working) and that plaintiff endured pain over a significant period of time.

Our inquiry does not end, however, with the finding that plaintiff had serious medical needs. In order to proceed with his Eighth Amendment claim, plaintiff must also demonstrate deliberate indifference on the part of prison officials. *Ramos,* 639 F.2d at 575.

■ "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain,' or to be 'repugnant to the conscience of mankind,'" so as to fall afoul of the Eighth Amendment. *Estelle,* 429 U.S. at 104, 97 S.Ct. at 291. Conduct which, at most, is medical malpractice redressable in state court does not represent cruel and unusual punishment. *Id.* at 107, 97 S.Ct. at 292–93. And accidental or inadvertent failure to provide adequate medical care, or negligent diagnosis or treatment do not constitute a medical wrong under the Eighth Amendment. *Ramos,* 639 F.2d at 575.

■ Nothing in the record indicates that defendants acted deliberately or made anything other than an inadvertent oversight in failing to include work restrictions along with recreational restrictions after plaintiff's consult with Dr. Eastes, the urologist.[5] In fact, *plaintiff himself alleges* (and defendants do not controvert) that Dr. Carper immediately admitted the mistake in plaintiff's restrictions when he became aware of it, and he immediately corrected plaintiff's records to reflect a work restriction as well as a recreational one. While it is unfortunate that plaintiff suffered a back injury as a result of his misclassification, mere negligence does not violate the United States Constitution's prohibition against deliberate indifference to a prisoner's serious medical needs. *See Whitley v. Albers,* 475 U.S. 312, 319, 106

5. Plaintiff alleges—for the first time in his *Memorandum of Points and Authorities in Support of Plaintiffs, [sic] Supplemental Response in Opposition to Defendants [sic] Motion(s) for Summary Judgment* (Doc. # 84) filed March 21, 1997—that defendants' failure to include work restrictions along with sports restrictions constituted part of a deliberate pattern and practice of favoring the Kansas Department of Corrections' interest in inmates working over the medical needs and safety of the inmates. Plaintiff not properly supported this allegation, and the Court therefore does not rule on it.

S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Medcalf v. State of Kansas*, 626 F.Supp. 1179, 1190 (D.Kan.1986). Plaintiff has not sufficiently alleged that his back injury was due to deliberate indifference rather than inadvertence.[6] Consequently, his claim on this issue does not state a constitutional violation.

■■■ Similarly, a prisoner's difference of opinion regarding the medical treatment he has received will not support a claim of cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.1993); *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir.1993); *Ramos*, 639 F.2d at 575. Plaintiff may believe that the best course of treatment for his condition includes physical therapy, different medications, visits to medical specialists, or even surgery. However, plaintiffs view alone—in contrast to Dr. Hanson's affidavit testimony that the treatment plaintiff received was appropriate and adequate for the conditions presented—does not sufficiently state a claim for denial of adequate medical care. Plaintiff has failed to offer more in support of his claims than his bare allegations and belief that a different course of treatment would have been better. At most, plaintiff has stated a claim for negligence or medical malpractice. Medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292.

### CONCLUSION

■■■ Deliberate indifference to serious medical needs must be evidenced by proof that corrections personnel intentionally denied, delayed access to or interfered with prescribed treatment. *Estelle*, 429 U.S. at 104–06, 97 S.Ct. at 291–92. Under this standard, an inmate must show more than a negligent or inadvertent failure to provide adequate medical care and more than a mere difference of opinion between the inmate and the correctional facility's medical staff regarding the proper course of treatment. *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir.1976). While the judgment of medical personnel which results in the deprivation of medical treatment may give rise to an action in tort for malpractice or negligence, it does not rise to a federal constitutional violation. *Estelle*, 429 U.S. at 105–06, 97 S.Ct. at 291–92. Plaintiff may have desired more, better or different medical treatment, but the Eighth Amendment does not require it in this instance. "[T]he question whether ... additional diagnostic techniques or forms of treatment ... is indicated is a classic example of a matter for medical judgment." *Id.* at 107, 97 S.Ct. at 293. Medical decisions such as the ones plaintiff complains of in this case do not represent cruel and unusual punishment. *See id.* Plaintiff offers no supporting facts or evidence which suggest that defendants acted with a sufficiently culpable state of mind to constitute a violation of the Eighth Amendment.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Even giving plaintiff's complaint the liberal construction that it deserves, plaintiff's claims and factual averments are insufficient to sustain his burden and withstand defendants' motion for summary judgment.

**IT IS THEREFORE ORDERED** that the motion for summary judgment contained in the *Answer of Louisa Osborne* (Doc. # 54) filed April 15, 1996,[7] and *Defendants' Motion*

---

6. As noted above, plaintiff has not named as a defendant the work supervisor who allegedly disregarded his restriction against strenuous activities and ordered him to lift heavy objects as part of his job duties.

7. The Court notes that summary judgment in favor of defendant Louisa Osborne is also warranted on additional grounds. Ms. Osborne, as Director of Nursing at HCF, was responsible for supervising the medical nursing staff and was not personally involved in the treatment and care of plaintiff. Plaintiff alleges that nurses under Ms. Osborne's supervision on several occasions made determinations as to whether plaintiff was allowed to see a medical doctor and also prescribed treatments for plaintiff without consulting with a doctor. Plaintiff submits that such actions "may constitute a failure to provide ade-

*for Summary Judgment* (Doc. # 56) filed April 19, 1996, by defendants Owen Carper and David Hanson be and hereby are sustained.

quate medical treatment and care as required by the Constitution...." Plaintiff does not dispute that Ms. Osborne had no personal involvement in the care he received at HCF. Personal participation is an essential allegation in a 42 U.S.C. § 1983 action. *Bennett v. Passic* 545 F.2d 1260, 1262–63 (10th Cir.1976). Defendants may not be sued in a § 1983 action based on a theory of respondeat superior. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). A defendant may not be held liable in a civil rights action merely because of her supervisory position. *Id. McKee v. Heggy* 703 F.2d 479, 483 (10th Cir.1983).